(January 27, 1903.)

## ANDERSON v. WAR EAGLE CONSOLIDATED MINING COMPANY.

[72 Pac. 671.]

PLEADINGS—CORPORATIONS—MERGER—LIABILITY.—1. A denial of an allegation in the complaint, which is sufficient under the rule, is not objectionable because it ends with the words, "other than as hereinafter set forth," even if the pleader does not thereafter refer to it. 2. When it is alleged in the complaint that the obligations of a corporation organized in the state of West Virginia were assumed by reason of the absorption of its property by a corporation organized in Connecticut, both empowered to do business in the state of Idaho, and the further allegation that there

was a merger of the West Virginia corporation, all of which is denied by the answer, and there is no proof of such merger, the Connecticut corporation cannot be held to respond. 3. Where one corporation buys the stock and property of another corporation, and assumes the payment of enumerated debts and the complaint does not allege fraud on the part of either the seller or buyer, the purchasing corporation cannot be held liable for a check issued eight months prior to such sale by the grantor in the transaction, unless it be enumerated in the schedule of debts assumed. 4. The fact that A. B. was the general manager of a corporation, and owned a large quantity of stock therein, and thereafter another corporation was organized, which purchased all or nearly all of the stock and property of the former corporation, he becoming general manager of the new corporation, and owning a large quantity of its stock, is not sufficient to hold the new corporation for the debts of the former; and this is especially true where it is shown that the bank check sued on was given more than eight months prior to the organization of the new company, where there is neither an allegation nor proof of fraud in the transfer.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

S. L. Tipton and Milton G. Cage, for Appellants.

The pleadings admit, and the testimony shows, that the defendant company acquired all the property, stock and business of the Twin Springs Placer Company, and hence, under the decisions, the defendant cannot escape from its liability to the plaintiff in this action. (*Blair v. St. Louis etc. R. Co.*, 22 Fed. 36; *Chicago R. R. Co. v. Howard*, 7 Wall. 329.) From the evidence in this case the defendant is not a *bona fide* purchaser. The defendant had knowledge of the debt sued upon through the general manager of both companies, and the president and secretary of one, the same parties being incorporators and stockholders in the defendant company. To be in the position of a *bona fide* purchaser the defendant must aver and prove not only that it had no notice of the plaintiff's right before its purchase, but that it had actually paid the purchase money before such notice. (*Jewett v. Palmer*, 7 Johns. Ch. (N. Y.) 65; *Eversdon v. Mayhew*, 65 Cal. 167, 3 Pac. 644; *Wilhoit v. Lyons,*

98 Cal. 413, 33 Pac. 325; *Davis v. Ward,* 109 Cal. 190, 50 Am.
St. Rep. 29, 41 Pac. 1010.) "A purchaser with means of
knowledge is not a *bona fide* purchaser:" (*Chattanooga etc.
R. Co. v. Evans,* 66 Fed. 823.) A reorganized company is not
a *bona fide* purchaser of the property. (3 Cook on Corpora-
tions, 2131; 1 Thompson on Corporations sec. 375; *McVickers
v. American Opera Co.,* 40 Fed. 861.) Officers having charge
of a corporation's business must, for all practical purposes, be
considered the corporation. (*Ardesco Oil Co. v. Gilson,* 63 Pa.
St. 146.) As to the liability of a corporation formed by the
consolidation of two or more companies, or where one company
is reorganized, merged and absorbed into another corporation.
(*Hibernia Ins. Co. v. St. Louis etc. Transp. Co.,* 13 Fed. 516.)
Where one corporation sells all its property to another corpora-
tion, and the selling corporation ceases to exist, the vendee cor-
poration will be liable for the debts of the vendor corporation.
This is a consolidation. (5 Thompson on Corporations, sec.
6547; Beach on Private Corporations, sec. 360; 1 Thompson
on Corporations, sec. 392; *Louisville etc. R. Co. v. Boney,* 117
Ind. 501, 20 N. E. 432, 3 L. R. A. 438, and note; *Thompson v.
Abbott,* 61 Mo. 176; *Berry v. K. C. Ft. S. & M. R. Co.,* 52 Kan,
774, 39 Am. St. Rep. 381, 36 Pac. 724; *Indiana etc. R. R. Co.
v. Jones,* 29 Ind. 465, 95 Am. Dec. 654; affirmed in 40 Ind. 41;
*Slattery v. St. Louis etc. Co.,* 91 Mo. 217, 60 Am. Rep. 245, 4
S. W. 79; *Brum v. Merchants' Mut. Ins. Co.,* 16 Fed. 140.)
The record discloses the fact that the defendant company ac-
quired all the property of the Twin Springs Placer Company,
by exchanging Twin Springs Placer Company stock owned by
the defendant for it. In other words, it divided the capital of
the Twin Springs Placer Company among its own stockholders.
This was a fraud upon the creditors of the Twin Springs Placer
Company. (*Montgomery Web Co. v. Dienelt,* 133 Pa. St. 585,
19 Am. St. Rep. 663, 19 Atl. 428; *Higgins v. California etc.
Co.,* 122 Cal. 373, 55 Pac. 155; *Blanc v. Paymaster etc. Co.,*
95 Cal. 524, 29 Am. St. Rep. 149, 30 Pac. 765; *Grenell v. De-
troit Gas Co.,* 112 Mich. 70, 70 N. W. 413; *Cole v. Millerton
Iron Co.,* 133 N. Y. 164, 28 Am. St. Rep. 615, 30 N. E. 847.)
That the court erred in refusing to allow the plaintiff to prove

by parol the official character of the officers of the defendant company and also of the Twin Springs Placer Company, we cite the following cases: *Boston Tunnel Co. v. McKenzie,* 67 Cal. 485, 8 Pac. 22; *City of Detroit v. Jackson,* 1 Doug., (Mich.) 106; *Druse v. Wheeler,* 2 Mich. 438; *Cahill v. Kalamazoo Mut. Ins. Co.,* 2 Doug. 123; *Walrath v. Campbell,* 28 Mich. 111; *Town of Concord v. Bank of Concord,* 16 N. H. 26; *Goodwin v. United States etc. Life Ins. Co.,* 24 Conn. 591; *East Tennessee etc. Ry. Co. v. Davis,* 91 Ala. 615, 8 South. 349; *Cabot v. Givin,* 45 Me. 144.

W. E. Borah, for Respondent.

We are somewhat bewildered by the multitude of errors specified, but after all they seem to be in a great measure a different method of stating what they seem in the body of the brief to rely upon as the principal alleged error—that the court should have found from the evidence a consolidation and an assumption of liability for this debt. We think in the first place the counsel have wholly mistaken their remedy. As we have stated, this is an action at law. It is not an equitable action seeking to uncover property or to follow property, not such an action as is approved of in almost all the authorities upon which counsel rely to sustain them. Neither did they allege actual fraud or a state of facts which would constitute fraud in law. They simply sue upon a contract, alleging that the defendant assumed this debt. If they have wholly failed to sustain the allegations of the complaint the action which they set forth we assume will have an end here, although it might appear, if certain facts were shown, that they would have a different remedy. Counsel cites many cases where the court holds that in equity recovery could be had, but here they must prove what they allege in their complaint—authority to consolidate— the legal consolidation under such conditions as the law says makes the company liable for the debts of the old company. There is no effort here to prove the laws of Connecticut, or any corporate powers, or any effort of the company to avail itself of the power even had it been shown to exist. I assume that it will not be contended for a moment that if Company A, ex-

isting under the laws of the state of New York, purchased the property of Company B that it would be consolidation, and neither would the latter company be liable for the debts of the other simply by reason of the purchase unless it expressly assumed and agreed to pay the debts. The War Eagle Company did not consolidate nor attempt to consolidate. It simply purchased a large portion of the property of the Twin Springs Company. For aught it appears here, the Twin Springs Company is responsible for every dollar it owes and it is certainly liable legally, speaking as the facts now appear. As we have already said, as to the consolidation, it should be noticed that the complaint sets forth and the proof discloses that these corporations existed by virtue of the laws of two different states. "A foreign corporation, which has attempted to consolidate with an Illinois corporation, does not thereby become liable at law for the latter's debts, since there is no statutory authority for such consolidation." (*Cavanagh v. O. L. Co.,* 84 Fed. 295, 6 Ency. of Law, 2d ed., 805; 1 Beach on Private Corporations, sec. 335; 7 Thompson on Corporations, sec. 8246.) The plaintiff must make proof of the fact of consolidation. (1 Beach on Private Corporations, secs. 328, 344; *Southgate v. Railway Co.,* 61 Mo. 90.) "The power to consolidate must have been conferred upon each of the constituent corporations by the state under whose laws it exists." (7 Thompson on Corporations, secs. 8207, 8217, 8218, 8231-8233, 8251, 8252; *St. Louis Co. v. T. H. Co.,* 145 U. S. 393, 12 Sup. Ct. Rep. 953; *Louisville etc. Ry. Co. v. Kentucky,* 161 U. S. 677, 16 Sup. Ct. Rep. 714; *Mansfield v. Drinker,* 30 Mich. 126, 6 Ency. of Law, 2d ed., 102; *Pearce v. Madison etc. R. R. Co.,* 21 How. 441; *Shields v. Ohio,* 59 U. S. 319.) Where a company purchases property from a corporation, or all the property of a corporation, that does not make it liable for the debts of that corporation, unless it expressly assumes to pay the debts, or unless it can be shown in equity that the sale was fraudulent and void, in which instance equity will hold the property to satisfy the debts of the selling company. As we have said, however, this is not a suit in equity, neither do they claim that there was any fraud, but they must stand or fall upon the allegations of the consoli-

dation or the assuming of the debt, because that is what they allege in this action at law. (2 Cook on Corporations, sec. 673; *Austin v. Tecumseh Bank,* 49 Neb. 412, 59 Am. St. Rep. 543, 68 N. W. 628, 35 L. R. A. 444; 1 Thompson on Corporations, sec. 263; *Pennison v. Chicago etc. Ry. Co.,* 93 Wis. 344, 67 N. W. 702; *Bruffett v. Railway Co.,* 25 Ill. 310; *Chase v. Michigan Tel. Co.,* 121 Mich. 631, 80 N. W. 717; *Ewing v. Shoe Co.,* 169 Mass. 72, 47 N. E. 241; 7 Thompson on Corporations, sec. 8275.) "Although the shareholders and officers of both companies may be the same, unless there is an express agreement to pay the debt of the vendor company, an action at law cannot be maintained. The remedy is in equity to set aside the transfer for want of consideration or fraud." (2 Morawetz on Corporations, sec. 812; 1 Thompson on Corporations, sec. 265; 2 Cook on Corporations, sec. 672; *Grant v. Ross,* 100 Ky. 44, 37 S. W. 263; *Central Co. v. Pettus,* 5 Sup. Ct. Rep. 387, 113 U. S. 915; 2 Clark and Marshall on Corporations, 996-998, 1005.) "There can be no necessity of a finding as to a fact if admitted. A finding is required only when an allegation of a material fact in the complaint is controverted by the answer so as to raise an issue." (*Swift v. Mugridge,* 8 Cal. 445.) "Where facts are admitted by the pleadings findings thereon are not necessary." (*Taylor v. Central Pac. Co.,* 67 Cal. 615, 8 Pac. 436; *Miller v. Luco,* 80 Cal. 257, 22 Pac. 195; *Johnson v. Vance,* 86 Cal. 128, 24 Pac. 863; *Gruhn v. Stanley,* 92 Cal. 86, 28 Pac. 56; *Bulwer v. Company,* 83 Cal. 589, 23 Pac. 1102; *Fox v. Fox,* 25 Cal. 587; *Pomeroy v. Gregory,* 66 Cal. 572, 6 Pac. 492.)

STOCKSLAGER, J.—Appellant commenced his action in the trial court to recover on a certain bank check purporting to be the check of the Twin Springs Placer Company, alleging: That defendant is a Connecticut corporation, and that the Twin Springs Placer Company is a West Virginia corporation. That the defendant company was authorized by the laws of Connecticut to consolidate with other companies engaged in like business as said defendant, and that by virtue of and under the authority of the laws of Connecticut defendant company did consolidate with the Twin Springs Company, and absorbed

the same. That defendant company was organized, among other things, for the purpose of purchasing, acquiring, holding, leasing, and operating mines, construction and operation of flumes, the purchase of stock or other securities of other corporations engaged in like business. That by virtue of the powers vested as aforesaid in defendant company, it acquired and became the owner of all the stock and all the property belonging to and owned by the Twin Springs Placer Company, situated in the state of Idaho, took possession of the property, and commenced the operation thereof, and has since about the 10th of January, 1900, been in the open, actual, and notorious possession of and operating the property theretofore in the possession of and operated by the Twin Springs Placer Company. That by reason of the acquisition of all the real and personal properties and the stock of the said Twin Springs Placer Company by said War Eagle Company said Twin Springs Placer Company became consolidated with, merged and absorbed into, the defendant company under the name of the War Eagle Consolidated Mining Company, which said company is now the owner of and in the possession of all the property, holdings, and stock heretofore owned and claimed by the Twin Springs Company. That prior to the acquisition of the stock and properties of the Twin Springs Placer Company by defendant company said Twin Springs Company was a corporation duly organized in the state of West Virginia, and as such was doing business acquiring real and personal property in Idaho; was the owner of and operating mines situated in the state of Idaho, which said property is now owned, managed, and controlled by defendant company. That on the eighth day of March, 1900, at Boise, Idaho, said Twin Springs Placer Company, by the general manager, R. J. Anderson, made its certain check in writing, payable to plaintiff, to wit:

"Boise, Idaho, March 8th, 1900.
"Twin Springs Placer Company.
"Pay to the order of J. M. Anderson $1338.48, thirteen hundred and thirty-eight and 48/100 dollars.
"TWIN SPRINGS PLACER CO.,
"By R. J. ANDERSON.
"The Capital State Bank, Boise, Idaho."

That at the time of making and delivery of said check defendant company had entered into actual, open, and exclusive possession of all property within the state of Idaho, theretofore owned and controlled by the said Twin Springs Placer Company, and was managing and operating the same under claim of title thereto, and had assumed all the debts due or outstanding against the said Twin Springs Placer Company. That said check as aforesaid was on the 29th of May, 1900, duly presented to the said Capital State Bank of Boise for payment, but was not paid by defendant company, or at all. That due notice of nonpayment was given defendant company. That said defendant company has not paid said check, nor any part thereof. Then follows prayer for judgment for the sum of $1,338.48, with interest from 29th of May, 1900, and costs of suit.

The answer admits that defendant is a corporation as alleged. Denies that defendant company was authorized by the laws of Connecticut, or at all, to consolidate with other companies or corporations in any manner, or at all. Denies that by virtue of or under authority of the laws of Connecticut, or at all, defendant did at any time consolidate with the Twin Springs Placer Company, or absorb the same. Denies that defendant was organized to operate, acquire, or own properties in connection with other parties or corporations, or to purchase stock or other securities of other corporations engaged in like business. Denies that defendant at any time, or at all, became the owner of all the stock or all or any of the property belonging to or owned by the Twin Springs Placer Company, or that it took or held possession of any property belonging to said company, or managed or operated the same in any manner other than as hereinafter specifically set forth. Denies that by virtue of any authority or acts or in any manner it ever consolidated with the Twin Springs Placer Company, or that the Twin Springs Placer Company was merged or absorbed into defendant company, or that there was ever any consolidation or merger in any manner between the War Eagle Consolidated Mining Company and the Twin Springs Placer Company, or that the War Eagle Consolidated Mining Company is now, or was at any time, the owner or in possession of all or any of the property

or all or any of the stock of the Twin Springs Placer Company "other than as hereinafter specifically set forth." Admits the Twin Springs Placer Company was and is a corporation duly organized, etc., under the laws of West Virginia, and denies that it has ever been consolidated with the War Eagle Consolidated Mining Company, or merged or absorbed into the same. Denies that the property of the Twin Springs Placer Company is now owned, managed, or controlled by defendant company, "other than as hereinafter specifically set forth." For want of information, knowledge, or belief, denies the execution and delivery of the check to plaintiff. Denies all the other allegations of the complaint, and on information and belief alleges that the Twin Springs Placer Company was not upon the eighth day of March, 1900, or at all, indebted to J. M. Anderson in the sum of $1,338.48, or in any sum whatsoever; and further alleges that said check was given wholly without authority from said defendant company, and without any consideration of any nature or kind. Further answering, alleges that upon the fifth day of December, 1900, it purchased of the Twin Springs Placer Company certain properties for a valuable consideration, then and there paid, and that all the property formerly owned by the Twin Springs Placer Company now held or owned by the War Eagle Consolidated Company was by virtue of said purchase, and that at the time of said purchase, to wit, December 5, 1900, the said Twin Springs Placer Company was not indebted to J. M. Anderson in any sum whatsoever; and the defendant further alleges that in no other respect has it owned or controlled or been in possession of any of the property formerly belonging to the Twin Springs Placer Company. Complaint and answer were verified.

Owing to the condition in which this case comes to this court, and the conclusions we have reached, we have deemed it proper to copy the pleadings almost entirely as they appear in the record. It will be seen that this is an action at law, as shown by the complaint, and was so treated in the trial court, by all parties to the action, and down to the time appellant filed his reply brief in this court. The findings of the court are as follows:

First and second find that defendant and the Twin Springs Placer Company are corporations, as shown by the pleadings; that R. J. Anderson was at all times mentioned in the complaint general manager of the Twin Springs Placer Company, which was organized about January 26, 1897.

Third shows the purpose for which defendant was organized to be to purchase, acquire, hold, and lease mines, timber and agricultural lands, the operation of mines, development and use of water or electrical power, the construction and operation of drainage or irrigation canals, flumes, and tunnels for the operation of the property of this corporation, or in connection with the properties owned by other parties or corporations, or the construction of canals, flumes, or tunnels for the supply of water or electric lights, or domestic or corporate purposes, the construction, operation, and management of smelters, assaying and refining works, mills, foundries, factories, and stores engaged in the manufacture of any product.

Fourth sets up the check in full upon which this action is based.

Fifth finds that the check was not presented to the Capital State Bank for payment until the twenty-eighth day of May, 1900, and payment was not made.

Sixth finds that afterward plaintiff went to R. J. Anderson, general manager of defendant, and called his attention to the fact that said check had not been paid; that the residence of plaintiff from the time he received the check until it was presented for payment was in Boise City, and the bank where it was made payable was also in Boise City; that no notice of the nonpayment of said check had ever been given to the Twin Springs Placer Company.

Seventh finds that upon November 19, 1900, the board of directors of the War Eagle Consolidated Mining Company passed a resolution, whereby, under the terms of its contract with R. J. Anderson, it became the owner of certain obligations and evidences of indebtedness wherein the Twin Springs Placer Company was the obligor, amounting to $262,100, with accrued interest. Defendant also became the owner of nearly all the capital stock of said Twin Springs Placer Company, amounting

at par to $1,599,910. That said Twin Springs Placer Company offered to grant and convey to defendant all the placer claims, millsites, water rights, ditches, etc., and any other real estate or interest therein situate in the state of Idaho, owned and controlled by it; also to assign to defendant all its personal property used in connection with its mining operations in the state of Idaho, in consideration of having surrendered to it all of its aforesaid obligations and evidences of indebtedness, as well as all its capital stock. That the officers of the company, deeming it to be the best interests that such offer should be accepted, duly transferred said evidence of indebtedness and surrendered the capital stock of said Twin Springs Placer Company, receiving in exchange therefor a deed for all the real estate and interest therein; also a bill of sale for all the personal property situated in Idaho belonging to said Twin Springs Placer Company. "Therefore, be it resolved, that the aforesaid action of the officers of defendant company be, and hereby is, ratified and confirmed." That the aggregate amount of such obligations purchased as aforesaid was $262,100. That the check sued upon in this action was nowhere referred to in said schedule.

Eighth finds that upon the thirtieth day of November, 1900, the Twin Springs Placer Company, by E. V. Douglass, executed and delivered to defendant a certain deed reciting a consideration of $36,000, by the terms of which said grantor granted, quitclaimed, etc., the Sea Gull placer mining claim and a large number of others enumerated in the finding, together with water rights, ditches, etc. That said deed had attached to it a receipt, to wit:

"Received of the War Eagle Consolidated Mining Company, $36,000, full consideration herein mentioned in the obligations of this company, in accordance with the terms of a resolution passed November 14th, A. D. 1900, by the board of directors of this company.

"TWIN SPRINGS PLACER COMPANY,
"By F. S. LEWIS,
"Treasurer."

Ninth finds, with reference to a deed by the Twin Springs Placer Company to defendant, that for a consideration of one dollar it sold a certain portion of the siphon and bridge across Middle Boise river, used in conveying water from Sheep creek across the river, together with flumes, etc.

Tenth finds that the evidence fails to show the value of the property deeded by the Twin Springs Placer Company to the War Eagle Consolidated Mining Company. Fails to show whether or not the Twin Springs Placer Company owned other property than that conveyed by the deed to the War Eagle Consolidated Mining Company. Fails to show what assets the Twin Springs Placer Company had after said deeds were executed; that the Twin Springs Placer Company was merged in the War Eagle Consolidated Mining Company, or consolidated therewith. That there is no evidence that the transfer from the Twin Springs Placer Company to the War Eagle Consolidated Mining Company of property above mentioned was fraudulent, or that said transfer was without consideration, or made for the purpose of defrauding the creditors of the Twin Springs Placer Company. That the evidence fails to show that the Twin Springs Placer Company was at the time of issuing the check, or at any time thereafter, insolvent, or unable to pay said check.

As conclusions of law the court finds that plaintiff is not entitled to recover against defendant, the War Eagle Consolidated Mining Company, upon the check sued upon in this action, and that the War Eagle Consolidated Mining Company is not liable therefor.

Counsel for appellant, in their brief, have twenty-two assignments of error. They first urge that the denials in paragraphs 4, 5, 7, and 9 of defendant's answer do not deny any allegation contained in the complaint. We cannot agree with this contention. The denials are in the usual language, and each one concludes with, "other than as hereinafter specifically set forth." If the pleader had not again referred to the particular paragraphs of the complaint, we think the denials would have been sufficient; but in the case at bar he did thereafter set up a separate defense, so far as those allegations are concerned, by

alleging that defendant bought and paid the full value of said property.

It is next urged that "defendant company acquired all the property, stock, and business of the Twin Springs Placer Company, and hence cannot escape liability to the plaintiff in this action." In support of this position counsel cite *Blair v. St. Louis etc. R. Co.* (C. C.), 22 Fed. 36, and quote from the decision to wit: "A transfer of all the assets from one company to another, whereby, through a mere change of name, an attempt is made to defraud creditors, or which would operate as a fraud on them, will not be upheld as against them, and the transferee taking the property with notice takes it *cum onere.*"

Appellants next urge that by reason of the complaint alleging the acquisition of all the stock, property, and business of the Twin Springs Placer Company by defendant company, that the plaintiff was a creditor of the Twin Springs Placer Company, that the defendant company had knowledge of the debt prior to the acquisition of such property, that R. J. Anderson was the general manager of both corporations, a stockholder in both, and had full knowledge, management, and control of both, and such facts being the case, within the rule laid down in *C. R. I. & P. R. R. v. Howard,* 7 Wall. 392, 19 L. ed. 120, they quote from this authority following: "Equity regards the property of a corporation as held in trust for the payment of the debts of the corporation, and recognizes the right of creditors to pursue it into whosoever's possession it may be transferred, unless it has passed into the hands of a *bona fide* purchaser." 1 Thompson on Corporations, section 375, is cited to the effect that, where several corporations are united in one, and the property of the old companies rests in the new, the corporation holds the property received from the absorbed companies with notice of any trust attached to it in favor of its creditors, and cannot claim the right of a *bona fide* purchaser without notice. *McVicker v. American Opera Co.* (C. C.), 40 Fed. 861, is cited. It holds that, where an insolvent corporation organizes under a new charter with a different name, its property is still liable for its debts, though transferred to the new corporation for a valuable consideration. *Hibernia Ins. Co. v. St. Louis etc.*

*Trans. Co.* (C. C.), reported in 13 Fed. 516, is relied upon by counsel, and is by them termed a leading case as to the liability of a corporation formed by the consolidation of two or more companies, or where one company is reorganized, merged, and absorbed into another corporation. A great number of other authorities are cited to the same effect, and, if the pleadings and facts in the case justify the position of counsel for appellant, and bring it within the rule of the authorities cited, the plaintiff should recover.

It will be observed that there is no allegation of fraud in the complaint; neither is it shown that the defendant company in any manner assumed the payment of this obligation. The obligations assumed by defendant, as shown by the list, amounting to $262,100, do not include the checks sued upon. It is also shown that defendant company, in addition to assuming the payment of the obligations of the Twin Springs Placer Company to the amount of $262,100, paid $36,000 for the property transferred to it by said Twin Springs Placer Company, and that the receipt for such amount was given at the time of the execution and delivery of the quitclaim deed for the property sold, which, as shown by the record, was on the nineteenth day of November, 1900, more than eight months after the execution and delivery of the check sued upon. By the pleadings and entire record in this case it is shown that it was never treated as a suit in equity. We are in harmony with the authorities that, if there was a fraudulent intent on the part of defendant in the purchase of the property of the Twin Springs Placer Company, and the pleadings and proof established such fraud, then plaintiff might follow the property of the Twin Springs Placer Company, and recover the amount due on his obligation; but the mere fact that the War Eagle Consolidated Mining Company purchased a large portion, or even all, of the property of the Twin Springs Placer Company, the former being a Connecticut corporation, and the latter a West Virginia corporation, is not sufficient evidence to entitle the plaintiff to recover on the latter's obligation, unless it is in some way shown that in the purchase defendant assumed the debt, or that fraud was practiced to defeat appellant's claim.

Neither is the fact that the same party was the general manager of both companies sufficient for such recovery. Had plaintiff established the allegation of merger in his complaint under the laws of Connecticut, and shown that by reason of a merger, as alleged, the absorbing company became liable for the debts of the absorbed company, then, we think, he should recover in this action. The evidence, as shown by the record, does not support the allegation. We are not informed by the record what the Connecticut law is on this subject, and the evidence does not show a merger in fact. It is true in this state that no particular form is required in a complaint. It must contain "a statement of the facts constituting the cause of action in ordinary and concise language," and, that being done, he is entitled to whatever relief his allegations and proof show him entitled to either at law or in equity.

A great many authorities are cited by counsel for respondent in support of his contention that defendant is not liable to plaintiff on the check sued upon under the pleadings and proofs in this case. We have examined them, and think they sustain his position. (See 1 Beach on Private Corporations, secs. 328-344; *Southgate v. Railway Co.,* 61 Mo. 90; 7 Thompson on Corporations, secs. 8217, 8218; 6 Ency. of Law, 2d ed., 102; *Pearce v. Company,* 21 How. 441, 16 L. ed. 184; *Shields v. Ohio,* 95 U. S. 319, 24 L. ed. 357; *Topeka Co. v. O. P. Co.,* 7 Okla. 220, 54 Pac. 445; 1 Thompson on Corporations, sec. 263; *Wyman v. Hallowell Bank,* 14 Mass. 58, 7 Am. Dec. 194; *Wenger v. Company* (C. C.), 105 Fed. 796.)

We think the judgment of the lower court should be affirmed, and it is so ordered, with costs to respondent.

Sullivan, C. J., and Ailshie, J., concur.

## ON REHEARING.

SULLIVAN, C. J.—A rehearing was granted in this case, and orally reargued to this court by respective counsel, and substantially the same as at the original hearing. The pleadings in the case are quite fully set out in the opinion on the original hearing, and it is not necessary to repeat them here.

The leading case cited by counsel for appellant is *Hibernia Ins. Co. v. St. Louis etc. Co.* (C. C.), 13 Fed. 516. That case is clearly distinguishable from the case at bar. That was a suit in equity or plaintiff then sought equitable relief, and it was alleged in the complaint or bill that the sale and transfer of the property of the old corporation to the new one was fraudulent, as against the rights of the complainants, and that the new corporation was not a *bona fide* purchaser of said property, while in the case at bar the complaint alleges, in substance, that under and by virtue of the laws of Connecticut the defendant corporation (which was a Connecticut corporation), was authorized to consolidate with other companies engaging in like business, and that by virtue of and under the authority of said laws the defendant corporation did consolidate with said Twin Springs Placer Company; that it became the owner of all of the property of the latter corporation, and assumed all of the debts and liabilities due or outstanding against the Twin Springs corporation, and the only relief prayed for is judgment for the amount of the check sued on and costs of suit. It is a complaint seeking by legal remedy to recover on said check. It contains no allegation that tends to charge fraud in any of the transactions between said corporations, and all of the allegations show that such transactions were fair and honorable. It is alleged that said respondent corporation assumed and agreed to pay the check sued on herein, which allegation was put in issue by the answer. The appellant failed to prove that allegation. While the evidence shows that respondent did assume to pay many of the debts and liabilities of the Twin Springs corporation, it failed to prove that respondent assumed and agreed to pay the check sued on herein.

But it is contended that it was a fraud on appellant for said respondent corporation to take over all of the property of the Twin Springs corporation without providing for the payments of its debts. Conceding that to be true, in order to hold respondent the complaint must contain the proper allegations. It must contain a statement of the facts constituting the cause of action in ordinary and concise language. It is too well

established to require citation of authorities that, in order to establish fraud, it must be alleged and proved.   In this case the allegations of the complaint show that the plaintiff considered that he had a legal right to recover the payment of said check from the respondent, and he sought to enforce it by legal remedy.   But when it came to the evidence, appellant failed to prove that respondent assumed and agreed to pay said check. And now it is contended that the purchase of all the property of the Twin Springs Company by the respondent without providing for the payment of its debts was a fraud upon appellant, and on that ground respondent is liable.   Conceding that to be true, as there is no fraud alleged in the complaint, and no issue made upon that point, the court was not authorized to give judgment on the ground of fraud.

It is contended that under our constitutions and statutes, all distinctions are prohibited between actions at law and suits in equity, and that the court was authorized to give judgment according to the justice of the case.   We shall proceed to consider the section of our state constitution and statute bearing upon this contention.

Section 1, article 5, of the constitution, is as follows: "The distinctions between actions at law and suits in equity, and the forms of all such actions and suits are hereby prohibited; and there shall be in this state but one form of action for the enforcement or protection of private rights, or the redress of private wrongs, which shall be denominated a civil action; and every action prosecuted by the people of the state as a party, against a person charged with a public offense, for the punishment of the same, shall be termed a criminal action.   Feigned issues are prohibited, and the fact at issue shall be tried by order of court before a jury."   Section 4020 of the Revised Statutes of 1887, is as follows: "There is in this territory but one form of civil actions for the enforcement or protection of private rights and the redress or prevention of private wrongs; provided, that in all matters not regulated by this code, in which there is any conflict or variance between the rules of equity jurisprudence and the rules of the common law, with reference to the same matter, the rules of equity shall prevail."

Said section of the constitution provides that there shall be but one form of action for the enforcement or protection of private rights or the redress of private wrongs, which action is denominated a "civil action." It also prohibits the distinction between actions at law and suits in equity and the forms of all such actions and suits. Section 4020 of the Revised Statutes of 1887 provides that there is but one form of civil actions for the enforcement of private rights and the redress or prevention of private wrongs. This state, in its territorial days, by the enactment of said section 4020, adopted what is known as the "reformed procedure," and thus attempted to and did do away with many of the technicalities and forms of common-law pleadings, following New York and other states in that regard. Substantially, the provisions of the section of the constitution above quoted were adopted by the legislature of New York in the adoption of the Code of Procedure of that state in 1848, the adoption of which was a shock to the opinions and prejudices of many lawyers, as well as judges, who had been accustomed to regard the common-law system of pleading as perfect. Mr. Pomeroy, in his work on Remedies and Remedial Rights, section 65 et seq., states how this innovation was received and interpreted by courts and judges, and cites many decisions bearing thereon, and concludes that the new system has not produced, and was not intended to produce, any alteration or effect upon the primary rights, duties, and liabilities of persons created by either department of the municipal law. Referring to the statutory provisions abolishing all distinction between action at law and suits in equity, in section 67 that author says: "The principles by which the courts determine the primary rights and duties of litigant parties remain unaltered. Upon the acts or omissions which were the occasion of a right called 'equitable' the same right is still based, and is still properly termed 'equitable.' From the acts or omissions which were the occasions of a right called 'legal,' the same right still arises, and is still with propriety termed 'legal.'" It is also stated that much of the confusion and uncertainty which now exists would disappear if the bench and bar should speak of legal and equitable rights,

legal and equitable remedies, but not of legal and equitable actions; and says: "To term an action 'legal' or 'equitable' is a misnomer, and one which involves a wrong conception and a false doctrine; since the statute has removed all distinction between legal and equitable actions, and has substituted in place of both a single civil action," etc.   And: "But, as the legislature did not say, nor mean to say, that the distinctions between legal and equitable rights or remedies are abolished, those terms may be used with propriety and correctness."   And again: "Abolition of the distinction between legal and equitable actions and the forms of legal actions does not abolish the distinction between remedies."   And again: "If the case which he [referring to the plaintiff in an action] states shows him entitled to any relief, either legal or equitable, his complaint is not to be dismissed because he has prayed for a judgment that is not embraced by the facts."   Of course, the prayer of a complaint is not controlling.   If the facts stated in the complaint are established by the evidence, and show that the plaintiff is entitled to any relief, the court may grant him such relief, although not prayed for; but in the case at bar the facts alleged in the complaint do not show that plaintiff is entitled to equitable relief, and the evidence fails to establish the issues made by the pleadings.   The complaint is drawn upon the theory that the remedy is legal, and not equitable; but when it came to the evidence that indicated that the plaintiff's remedy was equitable, appellant might have then and there amended his complaint, and shown by proper allegations that his remedy was equitable.   But he did not do so, and the court was not authorized to consider such amendment made when in fact it had not been made.   The case went to judgment on the issues made by the pleadings, which clearly show that plaintiff considered that his remedy was legal, and not equitable.   Mr. Pomeroy, in his work above cited, at section 71, sums the matter up as follows: "Thus it may be regarded as a settled rule, resulting from the statutory provisions in question, that, if a plaintiff has set forth facts constituting a cause of action, and entitling him to some relief, either legal or equitable, his

action should not be dismissed because he has misconceived the nature of his remedial right, and has asked for a legal remedy when it should have been equitable, or for equitable remedy when it should have been legal." Now, in the case at bar appellant asked for a legal remedy, and it must be conceded that he failed to establish facts entitling him to that remedy, and that he did not allege facts that would entitle him to an equitable remedy. In other words, he did not allege facts constituting a cause of action for equitable relief.

Finally, it is urged that appellant is entitled to some relief, and this court is asked to modify its decision so that it will not be a bar to another action to recover on said check. The court, in its former decision, did not intend to deprive the appellant of any right he might have left for recovery on said check; and, if he has an equitable remedy after being defeated in a suit for a legal one, this court has not deprived him of that right. In *Pratt v. Ratliff,* 10 Okla. 168, 61 Pac. 523, it was held that a judgment is a bar to another action if the cause of action be the same, though the form be different, and that the cause is the same when the same evidence will support both actions. If, under the well-established rules of law applicable to the question under consideration, the appellant is entitled to an equitable remedy to enforce the collection of said check, this court does not intend to deprive him of that remedy; but if, under said rules, the present action is a bar to another action, this court is powerless in the matter.

We adhere to the former opinion in this case.

The judgment is affirmed. Costs of this appeal are awarded to respondent.

Stockslager and Ailshie, JJ., concur.