THE CITY OF ALTOONA, *Appellee*, V. THE RICHARDSON
GAS & OIL COMPANY *et al.*, *Appellants*.

No. 16,321.

SYLLABUS BY THE COURT.

CORPORATIONS—*Transfer of Assets to Another Corporation—
Rights of Creditors*. Where one corporation becomes prac-
tically extinct, transferring all its assets to another and re-
ceiving in return stock in the other corporation, which suc-
ceeds to its business, the new corporation is liable, to the ex-
tent of the value of the property acquired, for the debts of
the old one.

Appeal from Wilson district court; JAMES W. FIN-
LEY, judge. Opinion filed February 12, 1910. Af-
firmed.

*P. C. Young*, for the appellants.

*E. D. Mikesell*, for the appellee.

The opinion of the court was delivered by

MASON, J.: Prior to January 26, 1907, the Richard-
son Gas & Oil Company, a corporation, was engaged
in furnishing natural gas to the city of Altoona and
its inhabitants, under an ordinance granting it the use
of the public streets for that purpose and providing
among other matters that so long as the company op-
erated without competition it should pay the city $300
a year, in quarterly installments. At that time the
company transferred all its property, including its
rights under the ordinance, to another corporation, the
Altoona Portland Cement Company, in consideration
of $600,000 of the common stock of the latter company,
which continued the business. Thereafter the city
sued both companies for several quarterly installments
due under the ordinance, some of which matured be-
fore the transfer and some after. The plaintiff ob-
tained judgment against both companies, and they
appeal.

The liability of the first-named company is determined by *Gas Co. v. Altoona,* 79 Kan. 466. The other company is clearly liable for all payments that matured after it engaged in business under the ordinance, the privileges of which it must be deemed to have taken burdened with the corresponding obligations. The serious question in the case is whether the second company is chargeable with the installments which were due to the city from the first company when it quit business. The company maintains that it occupies the attitude of the ordinary purchaser of property— that, not having contracted to pay the indebtedness of the former owner, it is under no obligation to do so. The city insists that the transaction between the two corporations was a virtual if not a technical consolidation—that the new company is the successor of the old, and is liable for its debts. This would be true if there had been an actual, legal consolidation *(Berry v. K. C. Ft. S. & M. Rld. Co.,* 52 Kan. 759), but that was not the case, since the old company retained its corporate entity.

A note in 11 L. R. A., n. s., 1119, fully digests the cases bearing upon the "effect of consolidation, merger, or absorption of corporation, on its unsecured liabilities, in absence of statutory or contract provision relative thereto." The general rule derivable from the authorities is there thus stated:

"Where the corporation incurring the liability ceases to have an independent existence *de jure,* the consolidated or absorbing corporation is liable at law, as well as in equity, the ground for such liability being sometimes stated to be the continuance of the original corporation under a new guise . . . and sometimes to be an assumption of liabilities arising by implication. . . . Where, however, there is an absorption of the business and assets—in other words, a merger *de facto*—by either a corporation formed for the purpose or one already in business, the liability of the corporation receiving the assets is rested upon the fa-

miliar trust-fund doctrine, since such receiving corporation does not stand as a *bona fide* purchaser for value. In such case the extent of the liability is necessarily determined by the value of the property received." (Page 1120.)

The case of *Anderson v. War Eagle Con. Min. Co.*, 8 Idaho, 789, seems somewhat out of harmony with the other cases collected in the note, but was decided upon a question of pleading and procedure.

In *Grenell v. Detroit Gas Co.*, 112 Mich. 70, it was said:

"A corporation can not sell all of its property, and take in payment stock in a new corporation, under an arrangement that has the effect of distributing the assets of the vendor among its stockholders, to the exclusion and prejudice of its creditors; and a company making such a purchase, in consideration of an issue of its own stock to such stockholders, takes the property subject to the rights of creditors. Such an arrangement is a diversion of the trust fund.

"It is said that there is nothing to show an intention to defeat the creditors of the Michigan Gas Company, as this was not a liquidated claim at the time this transfer was made. . . . Under the arrangement, the promoters and stockholders of the Detroit Gas Company knew that it was getting all of the property of the Michigan Gas Company, without provision for its debts, if there were any. It was bound to know that this property was charged with such debts, and ought not to be distributed among the stockholders to the exclusion of creditors. It was a party, then, to a diversion of the trust fund, and, having in its possession such fund, holds it subject to the payment of debts. It can not be called a *bona fide* purchaser of the property, as against existing creditors." (Pages 72, 73.)

Of the creditor under such circumstances it was said, in *Hurd v. N. Y. & C. Steam Laundry Co.*, 167 N. Y. 89:

"When he demands payment of his claim he is referred to the empty shell which is all that is left of the live corporation whose tangible assets constituted a

trust fund for the payment of his debt at the time of its creation. When he seeks to follow this fund he is told that the capital stock of the defendant in the hands of those who may be *bona fide* holders is his only resort. This is not the law." (Page 95.)

(See, also, Jones, Insol. & Fail. Corp., §§ 194-200.)

In the present case it was not positively and directly proved that the old company distributed among its stockholders the stock in the new company which it received in consideration of the transfer of its property, but that is inferable from the evidence. A witness testified that he was secretary of the old company —if there was any—and that there was no longer any stock in that company. It is clear that no provision was made for the payment of the debt due the city out of the stock issued to the old company. Of an entirely similar situation the court said, in *Hibernia Ins. Co. v. St. Louis & New Orleans Transp. Co.*, 13 Fed. 516:

"It [the old company] has received, it is true, paid-up stock in the new company, but that has doubtless been disposed of; or, if it has not been, it may at any moment be transferred. Equity will not compel the creditor of a corporation to waive his right to enforce his claim against the visible and tangible property of the corporation, and to run the chances of following and recovering the value of shares of stock after they are placed upon the market." (Page 518.)

Essentially the same doctrine is declared in *McIver v. Hardware Co.*, 144 N. C. 478, and *Luedecke v. Des Moines Cabinet Co.* [Iowa, 1908], 118 N. W. 456, in each of which cases, however, attention is called to the fact that as a creditor has no lien on the property of a corporation its assets can properly be called a trust fund only, as suggested by Mr. Pomeroy (3 Pom. Eq. Jur., 3d ed., § 1046), "by way of analogy or metaphor." In the latter case it was said:

"We do not recognize the trust-fund doctrine to the extent that it has obtained in some of the courts; but are of opinion that corporate creditors are entitled in

Altoona v. Richardson.

equity to the payment of their debts before any distribution of corporate property is made among the stockholders, and recognize the right of a creditor of a corporation to follow its assets or property into the hands of any one who is not a good-faith holder in the ordinary course of business. . . . In Thompson on Corporations, § 6547, it is said: 'Where one corporation transfers all its assets to another corporation, and thus practically ceases to exist, without having paid its debts, the purchasing corporation takes the property subject to an equitable lien or charge in favor of the creditors of the selling corporation. . . . And while the right to follow a trust fund into the hands of a third party depends upon the answer to the inquiry whether such third party took it with knowledge of the trust, the case being one where the trustee who transferred it to him had a power of disposition, yet in such a case as we are supposing, where one corporation transfers all its assets to another, not in the ordinary course of business, the very circumstances of the case imply full knowledge, on the part of the transferee, of all the facts necessary to charge the property in his hands with the debts of the transferor.' " (Page 458.)

In many of the cases where this principle has been applied special circumstances, not here present, have existed that tended to prevent the buying corporation from being regarded as a purchaser in good faith in the ordinary course of business. In several of them the stock issued by the buying company passed directly to stockholders of the selling company, or to its officers for their own benefit, and inasmuch as this circumstance proved knowledge by the purchaser that the price paid was not to be used to pay corporate debts it was relied upon as conclusive of the inquiry. But such absolute proof is not necessary to charge a corporation which absorbs another with notice of the necessary or probable effect upon creditors. It is well said (subject to the criticism noted as to the accuracy of the term "trust fund") that "equity will scrutinize with jealousy any arrangement among corporations whereby the

46—81 KAN.

assets of an insolvent corporation, which are a trust fund for its creditors, are turned over to another corporation, frittered away, or otherwise diverted from the creditors who have the equitable charge upon it." (3 Purdy's Beach on Priv. Corp., § 1287, p. 1886.) We think it consistent with the weight of authority and in accordance with sound reason to hold that the equitable right of the creditor to look for payment to the property of a debtor corporation is superior to any title that can be acquired through such a transaction as that here disclosed. We affirm the judgment upon the ground that where a corporation becomes practically extinct, transferring all its assets to another and receiving in return stock in the other corporation, which succeeds to its business, the new corporation is liable, to the extent of the value of the property acquired, for the debts of the old one. Such an arrangement is essentially a merger, and should be attended with the same consequences as a consolidation.

The judgment is affirmed.