JENNINGS, NEFF & Co. *v.* CRYSTAL ICE Co. *et al.**

(*Knoxville.*   September Term, 1913.)

1. CORPORATIONS.   Transfer of assets.   Rights of creditors.

Corporate assets are a trust fund, at least to the extent that creditors are entitled in equity to payment of their debts before any distribution among stockholders, and creditors have a right to follow such assets into the hands of anyone not a holder in good faith in the .ordinary course of business. (*Post,* p. 236.)

Case cited and approved:   Vance v. MeNabb Coal & Coke Co. et al., 92 Tenn., 47.

2. CORPORATIONS.   Transfer of assets.   Rights of creditors.

Where a corporation, in consideration of its own stock and bonds, purchases all the assets of another corporation without provision for the seller's debts, the transaction is out of the ordinary course of business, and the circumstances of the case imply full knowledge on the part of the purchaser of all facts necessary to charge the property in its hands with the debts of the seller. (*Post, p.* 236.)

Cases cited and approved:   Altoona v. Richardson Gas & Oil Co., 81 Kan., 717; Grenell v. Detroit Gas Co., 112 Mich., 70.

3. CORPORATIONS.   Transfer of assets.   Rights of creditors.

Where a corporation pending a suit against it transferred all of its property to another corporation, which agreed to assume payment of certain debts not including the one in suit, "and none other," and the purchaser in exchange therefor issued its own stock and bonds which, without provision for the creditors of the seller, it permitted to be distributed among

---

*For a discussion of the authorities on the effect of consolidation, merger, or absorption of corporation, on its unsecured liabilities in absence of statutory or contract provision relative thereto, see notes in 11 L. R. A. (N. S.), 1119 and 32 L. R. A. (N. S.), 616.

the seller's stockholders, most of whom were nonresidents, the purchaser was a party, with full notice, to the diversion of the trust fund, and as such held the property acquired by it impressed with the same trust with which it was originally charged, and was liable to the seller's creditors to the extent of the value of the property thus obtained; the creditors not being required to look alone to such stock and bonds. (*Post, pp.* 237, 238, 239.)

Cases cited and approved: Altoona v. Richardson Gas & Oil Co., 81 Kan., 717; Grenell v. Detroit Gas Co., 112 Mich., 70; Hurd v. New York & C. Steam Laundry Co., 167 N. Y., 89; McIver v. Young Hardware Co., 144 N. C., 478; Ft. Payne Bank v. Ala. Sanitarium, 103 Ala., 358; Chattanooga R. & C. R. Co. v. Evans, 66 Fed., 809; Hibernia Ins. Co. v. St. Louis & N. O. T. Co. (C. C.), 13 Fed., 516; Vicksburg & Yazoo City Telephone Co. v. Citizens' Telephone Co., 79 Miss., 341; Vance v. Mc-Nabb Coal & Coke Co., 92 Tenn., 47; Long v. Fisher Typewriter Co., 1 Tenn. Ch. App., 668; Northern Pacific Ry. Co. et al. v. Boyd, 228 U. S., 482.

Case cited and distinguished: Bristol Bank & Trust Co. v. Jonesboro Banking & Trust Co., 101 Tenn., 545.

4. CORPORATIONS. Transfer of assets. Remedies of creditors.
A fund due to a corporation, which sold all of its property to another corporation, which fund had been assigned to the purchaser, was not subject to levy or attachment in an action at law against the seller, and hence a bill in equity against the seller and purchaser could be maintained by a judgment creditor of the seller to read such fund. (*Post, p.* 241.)

Case cited and approved: Bryan v. Farecar, 112 Tenn., 503.

FROM  HAMILTON.

Appeal from Chancery Court, Hamilton County.— T. M. McConnell, Judge.

Jennings, Neff & Co. v. Ice Co.

SIZER, CHAMBLISS & CHAMBLISS, for appellants.

W. B. MILLER, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

The Crystal Ice Company, prior to 1910, operated two ice plants in the city of Chattanooga. Its properties were valued at about $300,000. It is not clear from the record just how many bonds it had outstanding; the amount was certainly not more than $90,000, however. Its current indebtedness seems to have been about $13,000. The net value of its assets, therefore, was in the neighborhood of $200,000. It was a Georgia corporation.

By two conveyances dated February 1, 1910, and November 11, 1910, respectively, the Crystal Ice Company transferred all its property of every description to the Atlantic Ice & Coal Corporation, which latter concern was chartered under the laws of Virginia. By the first conveyance above referred to, the plants operated by the Crystal Company were transferred to the Atlantic Company, and the former company ceased its business of manufacturing ice. It appears to have retained, however, its office for the purpose of collecting accounts and other similar matters, and by the second conveyance above referred to, on November 11, 1910, all its *choses* in action, bills receivable, a contingent interest in some litigated property, and all remaining assets were transferred to the Atlantic Com-

pany. After the second conveyance, while the Crystal Ice Company remained a corporate entity, it was a mere shell, having no property of any description.

Prior to February 1, 1910, the date of the first conveyance above mentioned, the complainants herein had brought suit against the Crystal Company in the courts of Hamilton county, and this suit was pending when the Crystal Ice Company was absorbed by the Atlantic Company in the manner just stated. A judgment was recovered against the Crystal Company by the complainants on April 21, 1911, and this judgment was affirmed by this court at the September term following, the amount thereof being $2,786.81 and costs. Execution was issued upon this judgment and was returned *nulla bona;* the Crystal Company being without assets at this time.

Aside from some $13,000 of its debts which were assumed by the Atlantic Company, the only consideration received by the Crystal Company for its assets was stock and bonds of the Atlantic Company. These securities of the absorbing company were turned over to the Crystal Company at the ratio of $1.75 for every $1 of its own stock. The transfer seems to have been effected through a Georgia trust company, and the securities of the Atlantic Company were distributed to the stockholders of the Crystal Company from Atlanta. Practically all of the stockholders of the Crystal Company resided in Georgia.

The complainants filed this bill in the chancery court of Hamilton county, seeking to reach certain real es-

tate in Chattanooga transferred in this deal by the Crystal Company to the Atlantic Company, and also to reach a certain fund in the hands of the Nashville, Chattanooga & St. Louis Railway, assigned by the Crystal Ice Company to the Atlantic Ice & Coal Company, and to subject this land and this fund to the satisfaction of their judgment against the Crystal Ice Company. It amounted to something over $6,000, and was withdrawn by the Atlantic Company, a bond being substituted therefor.

The chancellor sustained complainants' suit and gave them a decree on the above-mentioned bond for the amount of their judgment and interest, and the Atlantic Company has appealed to this court.

From the foregoing, it is seen that we have presented to us a case in which one corporation has acquired practically the entire assets of another in exchange for the stock and bonds of the purchasing company. The selling company retains no property and goes out of business. This is not, strictly speaking, a legal merger because the selling company retains its legal entity, although it is entirely dismantled of its assets. Such a transaction is sometimes referred to as a *de facto* merger. Whether the merger be *de facto* or *de jure*, the plight of the creditors of the absorbed corporation is the same. No property is left out of which they may satisfy their claims in either case in the hands of the selling corporation.

We think the chancellor's decree was correct.

It is insisted for appellant that where a corporation transfers all its assets to another corporation for a fair and adequate consideration, and both corporations maintain a separate existence, in the absence of fraud, the purchasing corporation will not be liable for the debts of the other.

The doctrine that corporate assets are a trust fund, at least to the extent that creditors are entitled in equity to payment of their debts before any distribution of corporate property is made among stockholders, is fully established in Tennessee, and creditors have a right to follow its assets or property into the hands of anyone who is not a holder in good faith in the ordinary course of business. *Vance* v. *McNabb Coal & Coke Company et al.*, 92 Tenn., 47, 20 S. W., 424; Pomeroy's Equity Jurisprudence, sec. 1046.

There is abundant authority likewise for the proposition that where one corporation, for its own stock and bonds, purchases all the assets of another, without provision for the debts of the latter, the transaction is out of the ordinary course of business, and the very circumstances of the case imply full knowledge on the part of the purchasing corporation of all facts necessary to charge the property in its hands with the debts of the selling corporation. Thompson on Corporations, sec. 6547; 10 Cyc., 1267; *Altoona* v. *Richardson Gas & Oil Co.*, 81 Kan., 717, 106 Pac., 1025, 26 L. R. A. (N. S.), 651; *Grenell* v. *Detroit Gas Co.*, 112 Mich., 70, 70 N. W., 413.

We may further observe that suit was pending on this particular demand at the time of the absorption of the properties of the Crystal Company by the Atlantic Company. Moreover, in the contract whereby certain of the Crystal's property was transferred, a number of its debts were scheduled, and it was agreed that the Atlantic Company should assume payment of the debts named, "and none other." The implication is unavoidable that the Atlantic Company knew of the existence of claims against the Crystal other than those it assumed, and undertook to relieve itself of liability for same by contract. We must conclude that it had both actual and constructive notice of such unpaid debts.

It follows that when this purchasing corporation took over in exchange for its own stock and bonds the assets of the other, and permitted these securities which it had substituted for the visible, tangible property of the selling corporation to be distributed among the shareholders of the latter, without provision for the creditors of the latter, it thereby became a party, with full notice, to the diversion of a trust fund. As such, the purchasing corporation holds the property so acquired impressed with the same trust with which said property was originally charged, and the purchasing corporation is liable to the creditors of the selling corporation to the extent of the value of the property thus obtained.

Creditors of the old corporation cannot be required to look alone to the stock and bonds which were sub-

stituted for the real, tangible assets of that corporation. The value of securities so substituted is more or less problematical, and creditors should not be forced to surrender their claim against available, visible assets, and transfer such claim to new securities. Their remedy cannot thus be hindered and impaired for the benefit of stockholders.

This would be true even if the securities the Atlantic Company had given in exchange for the properties of the Crystal Company had actually been held intact by the latter company until all creditors were satisfied. As a matter of fact, however, in this case these securities were distributed among the stockholders of the Crystal Company from Atlanta, and there is nothing to indicate that such distribution was not had immediately upon the conveyance of the Crystal Company being executed.

Furthermore, these were securities of a foreign corporation, and were distributed among nonresidents of the State, and we are unwilling to approve any device by which tangible property of a corporation located here and subject to the debts of that corporation can be withdrawn from the reach of creditors and distributed among nonresident stockholders. Corporate creditors may not be thus deprived of available security for their claim and forced to resort to difficult and inconvenient litigation in foreign States.

We are aware that there is some conflict in the cases as to the rights of creditors under circumstances such as these, but we think the views we have expressed are

sustained by the weight of authority. We have no hesitation in announcing our belief that such views are correct, and they are in harmony with the following cases: *Altoona* v. *Richardson Gas & Oil Company,* 81 Kan., 717, 106 Pac., 1025, 26 L. R. A. (N. S.), 651; *Grenell* v. *Detroit Gas Company,* 112 Mich., 70, 70 N. W., 413; *Hurd* v. *New York & C. Steam Laundry Co.,* 167 N. Y., 89, 60 N. E., 327; *McIver* v. *Young Hdw. Co.,* 144 N. C., 478, 57 S. E., 169, 119 Am. St. Rep., 970; *Ft. Payne Bank* v. *Ala. Sanitarium,* 103 Ala., 358, 15 South., 618; *Chattanooga R. & C. R. Co.* v. *Evans,* 66 Fed., 809, 14 C. C. A., 116; *Hibernia Ins. Co.* v. *St. Louis & N. O. T. Co.* (C. C.), 13 Fed., 516; *Vicksburg & Yazoo City Telephone Company* v. *Citizens' Telephone Co.,* 79 Miss., 341, 30 South., 725, 89 Am. St. Rep., 656. Our own cases, while not exactly in point, on principle, support our holding. *Vance* v. *McNabb Coal & Coke Company,* 92 Tenn., 47, 20 S. W., 424; *Long* v. *Fisher Typewriter Co.,* 1 Tenn. Ch. App., 668.

The case of *Bristol Bank & Trust Company* v. *Jonesboro Banking & Trust Co.,* 101 Tenn., 545, 48 S. W., 228, is not applicable, for that treated of the conveyance of the assets of a partnership and not those of a corporation.

Referring again to the authorities above cited, it is said by the New York Court of Appeals in *Hurd* v. *New York & C. Steam Laundry Co.,* 167 N. Y., 89, 60 N. E., 327, that when a creditor of a corporation so absorbed demands payment of his claim, "he is referred to the empty shell which is all that is left of the live cor-

poration whose tangible assets constituted a trust fund for the payment of its debt at the time of its creation. When he seeks to follow this fund, he is told that the capital stock of the defendant in the hands of those who may be *bona fide* holders is his only resort. This is not the law."

In *Grenell* v. *Detroit Gas Co.*, 112 Mich., 70, 70 N. W., 413, it is said:

"A corporation cannot sell all of its property, and take in payment stock in a new corporation, under an arrangement that has the effect of distributing the assets of the vendor among its stockholders, to the exclusion and prejudice of its creditors; and a company making such a purchase, in consideration of an issue of its own stock to such stockholders, takes the property subject to the rights of creditors. Such an arrangement is a diversion of the trust fund. . . . It was bound to know that this property was charged with such debts, and ought not to be distributed among the stockholders to the exclusion of creditors. It was a party, then, to a diversion of the trust fund, and, having in its possession such fund, holds it subject to the payment of debts. It cannot be called a *bona fide* purchaser of the property, as against existing creditors."

The Kansas court, in the case of *Altoona* v. *Richardson Gas & Oil Co.*, 81 Kan., 717, 106 Pac., 1025, 26 L. R. A. (N. S.), 651, says:

"Where a corporation becomes practically extinct, transferring all its assets to another and receiving in

return stock in the other corporation, which succeeds to its business, the new corporation is liable, to the extent of the value of the property acquired, for the debts of the old one. Such an arrangement is essentially a merger, and should be attended with the same consequences as a consolidation."

The North Carolina court in *McIver* v. *Young Hdw. Co.*, 144 N. C., 478, 57 S. E., 169, 119 Am. St. Rep., 970, observes:

"Such a conveyance of the assets is practically, and to all intents and purposes, a voluntary one, as no consideration is actually paid to the corporation which can stand as a substitute to creditors for the assets so transferred and be as available and valuable to them as the original trust fund, the place of which it has taken. A transaction that produces this result will not defeat the trust which the law imposes upon the fund, nor impair the remedy of creditors if any debts remain unpaid."

Responding to the contention that creditors should be required to resort alone to the stock of the purchasing company received for the assets of the selling company, in *Hibernia Ins. Co.* v. *St. Louis & N. O. T. Co.* (C. C.), 13 Feb., 516, the court says:

"Equity will not compel the creditor of a corporation to waive his right to enforce his claim against the visible and tangible property of the corporation, and to run the chances of following and recovering the value of shares of stock after they are placed upon the market."

128 Tenn. 16

Without further elaboration or quotation from the cases, we are satisfied that our conclusion heretofore announced is sound, and we are content to rest it upon the authorities mentioned. Cases bearing on all phases of this question are collected in notes in 11 L. R. A. (N. S.), 1119, and 32 L. R. A. (N. S.), 616.

In the recent case of *Northern Pacific Ry. Co. et al.* v. *Boyd* (April 28, 1913), 228 U. S. 482, 33 Sup. Ct. 554, 57 L. Ed. ———, the supreme court goes to far greater length than do we herein to protect the rights of a corporate creditor.

It is insisted that the chancellor was in error in subjecting the fund in the hands of the Nashville, Chattanooga & St. Louis Railway to the payment of this judgment. The contention is that this fund was a debt due to the Crystal Company, and that this bill is merely a proceeding to subject this debt due the Crystal Company to a judgment against that company, and it is argued that equity has no jurisdiction of such proceedings, inasmuch as the fund in the hands of the railway company was subject to levy or attachment at law. *Bryan* v. *Zarecor*, 112 Tenn., 503, 81 S. W., 1252, is cited for this.

Appellants misapprehend the scope of the bill. It is distinctly stated therein in the alternative that this claim against the railway is due to the Atlantic Company, and is the property of the Atlantic Company, and in one aspect the bill seeks to reach it as the property of the Atlantic Company. Considered in this light, the bill was properly maintained. This demand,

subject to the result of the litigation between the railway company and the Crystal Company, was duly assigned to the Atlantic Company, as the proof shows, and the complainants had a right to follow all property of the Crystal Company into the hands of the Atlantic Company to the extent that such property was exchanged for stock and bonds. Considering this fund as the property of the Atlantic Company, it could have been reached in no other way than by bill in equity.

There is no error in the decree of the chancellor, and it will be affirmed, with costs.