JEHIEL T. HURD, as Receiver of the COMMERCIAL STEAM LAUNDRY COMPANY, LIMITED, Appellant, *v.* NEW YORK AND COMMERCIAL STEAM LAUNDRY COMPANY, Respondent.

CORPORATIONS — RIGHTS OF CREDITORS CANNOT BE IMPAIRED BY SALE OF PLANT AND RETIREMENT FROM BUSINESS. Where the rights of a creditor have intervened a corporation has no power, even with the consent of all its stockholders, to sell its plant to another corporation and to retire from business, taking payment in the stock of the purchasing corporation, which is issued, not to it, or its officers as trustees, but to an individual stockholder, who does not undertake to pay the corporate debts, and who distributes it without regard to such debts, since the creditor has the right to rely upon its assets for the payment of his debt and has an equitable lien thereon, both as against stockholders and all transferees except those purchasing for good faith and for value, and, under such circumstances, the stockholder could not become a *bona fide* purchaser.

*Hurd* v. *N. Y. & C. Steam Laundry Co.*, 52 App. Div. 467, reversed.

(Submitted March 19, 1901; decided April 30, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 20, 1900, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term, and granting a new trial.

12

The nature of the action and the facts, as far as material, are stated in the opinion.

*Edwin C. Dusenbury* for appellant. This court will not review the facts. (*N. H. Co.* v. *Bement & Sons*, 163 N. Y. 505; *Newman* v. *M. S. & L. Assn.*, 164 N. Y. 248; *Matter of Keefe*, 164 N. Y. 352; *Van Beuren* v. *Wotherspoon*, 164 N. Y. 368.) The transfer of the assets of the old company to the new company was fraudulent in fact and in law. (*Cole* v. *M. I. Co.*, 133 N. Y. 167; *Abbott* v. *A. H. R. Co.*, 33 Barb. 578; *People* v. *Ballard*, 134 N. Y. 269; *Grenell* v. *Gas Co.*, 112 Mich. 70; *H. Ins. Co.* v. *St. L. & N. O. T. Co.*, 13 Fed. Rep. 516; *Fogg* v. *St. L., H. & K. R. Co.*, 17 Fed. Rep. 871; *Brum* v. *Ins. Co.*, 16 Fed. Rep. 140; *Blair* v. *St. L., H. & K. R. Co.*, 22 Fed. Rep. 38; *Slattery* v. *St. L. & N. O. T. Co.*, 91 Mo. 217; *Thompson* v. *Abbott*, 61 Mo. 177.) The defendant took with notice, both constructive and actual. (Morawetz on Corp. § 781; Beach on Corp. § 343; *Cragie* v. *Hadley*, 99 N. Y. 131, 134; *Bank of U. S.* v. *Davies*, 2 Hill, 451; *Fulton Bank* v. *N. Y. & S. C. Co.*, 4 Paige, 127; *The Distilled Spirits*, 11 Wall. [U. S.] 356.)

*W. W. Westervelt* and *Delos McCurdy* for respondent. The sale of the property of the old company to the defendant for the stock of the new company was not in itself illegal. (*Holmes & G. M. Co.* v. *H. & W. M. Co.*, 127 N. Y. 252.) There is no proof of bad faith on the part of the defendant. A mere conjecture or surmise is not sufficient to authorize a finding to that effect. (*Lopez* v. *Campbell*, 163 N. Y. 340.)

WERNER, J. Three companies figure in the transactions out of which this controversy arose. Two of these were the Commercial Steam Laundry Company, Limited, a domestic corporation, and the New York Steam Laundry Company, not incorporated, the latter being owned and conducted by one Thomas E. Sloan. On November 3rd, 1890, the defendant, the New York and Commercial Steam Laundry Company, was

incorporated.   Thereupon the two first-named companies were consolidated with the last named, and the business previously conducted by the two was taken over and continued by the third. For the sake of brevity these companies will be referred to as the Commercial Company, the New York Company and the defendant company respectively.   Prior to the so-called consolidation the Commercial Company was indebted to one Eliza N. Hall on a disputed claim upon which judgment was obtained against that company, on August 9th, 1893, for $4,381.16. Before the entry of this judgment and on April 30th, 1891, the plant and machinery of the Commercial Company were transferred to the defendant by a bill of sale pursuant to a resolution of the board of directors of the Commercial Company.   Upon the same day that the Hall judgment was obtained an execution was issued thereon and returned unsatisfied.   Thereafter an action was brought by said Hall as judgment creditor against the Commercial Company for the sequestration of its property, and a judgment was had therein appointing the plaintiff in this action receiver of said company.   As such receiver he became vested with the title to all its property and things in action.   He qualified, but has never received any of the company's property.   This action is brought by the plaintiff, as such receiver, to compel an accounting by the defendant as to the assets received by it from the Commercial Company and to recover a money judgment.   The plant and machinery of the Commercial Company were valued at $20,000.   The resolution, by virtue of which they were transferred to the defendant company, directed the president and treasurer of the Commercial Company to execute the bill of sale for a consideration of $20,000, to be paid in the capital stock of the defendant company, which was to be issued to Anthony O. Rowe, as treasurer, and to be afterwards distributed among the stockholders of the Commercial Company.   Shortly after the execution and delivery of this bill of sale 200 shares of the capital stock of the defendant company, of the par value of $100 each, were issued to Margaret H. Rowe, who was the princi-

pal stockholder of the Commercial Company, and the wife of Anthony O. Rowe, its president. No consideration passed from the defendant company to the Commercial Company or its officers or directors, except the 200 shares of stock issued to said Margaret H. Rowe. About seven months after the issue of stock above referred to, and subsequent to the commencement of the action by Hall against the Commercial Company, said stock was, under the advice of counsel, returned to the defendant, and a new certificate for 200 shares of defendant's stock was issued to Anthony O. Rowe as treasurer of the Commercial Company. This stock has since been distributed among its stockholders. The transfer of the plant and machinery of the Commercial Company was not made in the usual course of business. The effect of such transfer was to terminate the regular business of that company, and it was made and accepted by the defendant for that purpose. These are in substance the facts as found by the trial court, and upon which it predicated the legal conclusions that the transfer to the Commercial Company was illegal, fraudulent and void against its creditors and against the plaintiff in this action; that the defendant is chargeable with notice of the existence of the claim of Eliza N. Hall and took the assets of the Commercial Company charged with all its debts; that such assets constituted a trust fund in the hands of the defendant for the payment of such debts; that the 200 shares of stock issued by the defendant in payment for the assets of the Commercial Company having been divided among the stockholders of the latter company, there was no claim of such stockholders against the defendant; that the proof did not show that there were any other debts owing by the Commercial Company than those growing out of the Hall claim. Upon these findings and conclusions judgment was directed in favor of the plaintiff for the amount of the Hall judgment, the costs in the sequestration action, the interest on both amounts, and the commissions of the receiver, amounting in all to the sum of $6,608.15. This judgment was reversed in the Appellate Division by a

divided court.   The order of reversal is silent as to the grounds upon which it is based, and we must, therefore, assume that the facts found at Special Term remain undisturbed.   (Sec. 1338, Code Civ. Pro.)   Upon these facts we cannot concur in the prevailing opinion below.   That opinion rests in part, as it seems to us, upon assumptions of fact which conflict with the findings of the trial court, and in part upon a misapprehension as to the effect of other facts regarding which there is no dispute.   It is not denied, and the trial court expressly found, that the object of the consolidation, as it is called, was to transfer to the defendant all of the business which had previously been done by the Commercial Company and the New York Company.   The officers of the Commercial Company became officers in the defendant company.   The stock given by the defendant company in payment for the assets of the Commercial Company instead of being issued directly to the latter, or to some person as trustee for its creditors and stockholders, was issued to the wife of the man named in the resolution, as the recipient for distribution.   Under these circumstances the fact that the Commercial Company still had the legal title to a lease and some book accounts, the values of which are not established, does not seem to take the case out of the rule which applies in favor of creditors when a corporation has been stripped of its assets and deprived of its power to continue the business for which it was formed.   Neither can we speculate as to the value of the stock issued by the defendant company in payment for the assets of the Commercial Company, for the purpose of assuming that if such stock were worth par the latter company would have sufficient means to continue its business, when the trial court has found that the prime purpose of the transaction was to discontinue that business.   Nor do the findings of the trial court seem to justify the assumption indulged in by the Appellate Division that the issuance of the defendant's stock to Margaret H. Rowe was a mere mistake which was corrected by the subsequent reissue of the same to her husband, who was the treasurer of the Commercial Com-

pany, and to whom the resolution authorizing the sale directed the stock to be issued. Stripped of all speculations and assumptions we have here the case of a corporation which is in debt. While so indebted its officers enter into an agreement under which substantially all of its assets are transferred to another corporation which is thereafter to continue the business. In payment of this transfer the purchasing corporation issues some of its capital stock, not to the selling corporation, nor yet to its officers as trustees, but to the principal stockholder as an individual. When the creditor undertakes to assert his rights the stock is reissued to the late treasurer of the selling corporation, who has become the president of the purchasing corporation, and he distributes the same without regard to the claims of creditors. This is the transaction which is sought to be defended under the authority of *H. & G. M. Co.* v. *H. & W. M. Co.* (127 N. Y. 252). A mere glance at that case will suffice to emphasize the difference between it and the case at bar. There the question was, primarily, whether the plaintiff could recover upon a promissory note which it took in payment for stock of the defendant corporation, in consideration of the transfer to the latter of the rolling mill, machinery, etc., of the former, and, incidentally, whether the taking of this stock was *ultra vires* under a charter which provided that "it shall be unlawful for such company to use any of its funds in the purchase of any stock in any other corporation." (Laws 1848, chap. 40, sec. 8.) It was held that the plaintiff could recover, as the transaction was not *ultra vires,* because the statute did not forbid the taking of stock in payment of a debt, and, also, that if it were *ultra vires* the defendants were in no position to interpose a plea. The statement in the opinion in that case, to the effect that a corporation has power, with the consent of all of its stockholders, to sell its plant to another corporation and to retire from business, taking payment in the stock of the other corporation, was entirely correct as qualified by the facts before the court. No rights of creditors intervened, the stockholders had all consented, and the question arose between the parties to a promissory note

given for some of the stock.   Here we have an entirely differ-
ent condition of things.   The stockholders consent but the
creditor objects.   When he demands payment of his claim he
is referred to the empty shell which is all that is left of the
live corporation whose tangible assets constituted a trust fund
for the payment of his debt at the time of its creation.
When he seeks to follow this fund he is told that the capital
stock of the defendant in the hands of those who may be *bona
fide* holders is his only resort.   This is not the law.   In
the recent case of *Cole* v. *M. I. Co.* (133 N. Y. 164) this
court decided that a transaction similar to the one under
review was illegal as against creditors.   In that case the plain-
tiff was a creditor of the National Mining Company.   During
the pendency of an action to establish the claim of the former
the latter transferred all its property and assets to the defend-
ant, the Millerton Iron Company, which promptly executed
a mortgage covering all of its property, so that when the
plaintiff obtained his judgment and issued his execution
he found nothing to levy upon.   In that case the defend-
ant trust company, which took the mortgage in good faith
and, therefore, occupied a much better position than the
defendant herein, appealed to this court from the order of
the Appellate Division reversing the judgment dismiss-
ing the complaint.   In discussing the rights of the parties,
Judge Finch, speaking for this court said : " As against
the creditor the transfer to the Millerton Company was
illegal and in fraud of his rights.   The assets of a corpora-
tion are a trust fund for the payment of its debts, upon
which the creditors have an equitable lien, both as against
stockholders and all transferees, except those purchasing in
good faith and for value.   (*Bartlett* v. *Drew*, 57 N. Y. 587;
*Brum* v. *M. M. Ins. Co.*, 16 Fed. Rep. 143; Morawetz on
Corp. sec. 791.)   The Millerton Company was not such a pur-
chaser.   It parted with nothing.   It knew and participated in
the illegal purpose to destroy the National Company, to make
it utterly insolvent and to deprive its creditors of the trust
fund upon which they had the right to rely, and so they were

at liberty to set aside the transfer so far as it barred their remedy, and to enforce their equitable lien upon the property in the hands of the transferee." The only difference between the transferee in that case and in this, is that there it gave up nothing except its promise to pay the indebtedness of the transferrer, and here it gave up stock, not to the transferrer, but to an individual stockholder who did not undertake to pay the corporate debts. Neither became a purchaser for value under such circumstances. Other authorities might be referred to in support of the position above outlined, but the case just cited is so directly in point that a further discussion seems useless.

The order of the Appellate Division should be reversed and the judgment of the Special Term affirmed, with costs in all courts.

BARTLETT, MARTIN, VANN and CULLEN, JJ., concur; GRAY, J., concurs in result; PARKER, Ch. J., not voting.

Ordered accordingly.