(44 Misc. Rep. 31.)

RAYMOND v. SECURITY TRUST & LIFE INS. CO. et al.

(Supreme Court, Special Term, New York County. June, 1904.)

1. RECEIVERS—ILLEGAL TRANSFER OF ASSETS—RIGHT OF ACTION.

A receiver of a trust and life insurance company organized under Insurance Law, art. 6, on appointment under Code Civ. Proc. § 1784, in sequestration proceedings, is vested with title to all the property and choses in action of the corporation, and represents the stockholders, the creditors of the corporation, and the policy holders, and may sue to set aside an illegal transfer of its property previously made.

2. INSURANCE COMPANY—TRANSFER OF ASSETS—LEGALITY.

An insurance company transferred all its assets, which constituted a trust fund for the payment of its debts, including bonds deposited with the State Superintendent of Insurance, under Insurance Law (Laws 1892, p. 1960, c. 690) § 71, as a condition of doing business in the state. The transferee agreed to assume liability on all outstanding policies, and pay all death losses reported as per schedule attached, and also certain commissions and rent charges. *Held*, that as the transferee must have known that the transfer would terminate the existence of the corporation, by depriving it of all means of carrying out the object of its existence, and as such transfer was made against the will of a number of stockholders, it was an illegal transaction, and not a reinsurance, as contemplated by Insurance Law (Laws 1892, p. 1940, c. 690) § 22.

3. SAME—ACTION BY JUDGMENT CREDITOR.

Where an insurance company assigns all its assets, including the deposit with the State Superintendent of Insurance, and a judgment creditor of the corporation, with execution returned unsatisfied, sues in his own name, but in effect for the receiver and the creditors and stockholders who may elect to come in, he can, if the evidence justifies it, have the transfer set aside, but cannot restrain the State Superintendent from transferring the bonds on deposit, nor can such Superintendent be directed to pay over such bonds to the receiver; such bonds being a trust fund on which the policy holders have a first lien, distribution of which must be made either by the Superintendent himself, or by the court.

Action by Ralph Raymond against the Security Trust & Life Insurance Company and others to set aside a transfer. Judgment for plaintiff.

Goodale, Hanson & Price, for plaintiff and for receiver.

Blandy, Mooney & Shipman, for defendants Security Trust & Life Insurance Co. and American Union Life Insurance Co.

GILDERSLEEVE, J. The plaintiff recovered a judgment against the defendant the American Union Life Insurance Company in April, 1902. Execution thereon was issued and returned wholly unsatisfied. Some months thereafter the plaintiff brought this action "on behalf of himself and all other creditors of the American Union Life Insurance Company who may come in and be made parties hereto, and also on behalf of such stockholders of said corporation as may come in and be made parties hereto," against the Security Trust & Life Insurance Company, the American Union Life Insurance Company, Francis Hendricks, as Superintendent of Insurance, and Albert B. Ovitt, as receiver of the American Union Life Insurance Company, to set aside a certain contract made on February 18, 1901, between the two life insurance companies. By this contract

the American Company transferred to the Security Company all of its assets, including $100,000 in bonds deposited with the Superintendent of Insurance for the benefit of the policy holders, as required by section 71 of the insurance law (Laws 1892, p. 1960, c. 690), and the Security Company agreed, in return, to assume all the liability of the American Company to—

"Its living policy holders in good standing, of any kind or nature whatsoever, as evidenced by its schedule of policies hereto attached, * * * and to pay all death losses reported, as per schedule hereto attached and made a part of this agreement; all agency renewal contracts on business in force, not exceeding on an average of 7½% per annum; the rent of the home office, Nos. 9 and 11 Broadway, City of New York, from and after this date to May 1, 1901, at the rate of $5,000 per annum; and the rent of agency offices, as per schedule hereto attached and made a part hereof."

The said contract further provided as follows:

"This contract, from the date and hour of its execution, to wit, 3 o'clock P. M. on the 18th day of February, 1901, shall be obligatory on both parties and their successors and assigns, subject only to the ratification thereof by the stockholders of the American Union Life Insurance Company, at their meeting for February 26, 1901; and a verification of the schedules hereto attached by the Security Trust & Life Insurance Company."

Annexed to the contract are schedules showing death losses, amount of income policies, bonds and stocks, amount of cash, mortgages, notes, and rentals. This action was commenced by the service of a summons, without the complaint, and before the appointment of the receiver. As soon, however, as the receiver was appointed, the summons was amended by making him a party, and thereafter the complaint was prepared and served. The plaintiff and the receiver appear by the same attorneys, and the answer of the receiver admits all the allegations of the complaint. The complaint and the answer of the receiver also demand the same relief, i. e., the setting aside of the said contract, and the payment of the assets of the American Company to the receiver. The plaintiff demands no relief personal to himself, but seeks, as we have seen, a judgment for the benefit of the receiver. The relief demanded by the plaintiff and the receiver against the Superintendent of Insurance is for a judgment restraining him from transferring the said $100,000 in bonds deposited with him under section 71 of the insurance law by the American Company to the Security Trust & Life Insurance Company, and directing him to transfer and deliver to the receiver said bonds, and the income thereof, "due regard being had for the lien which policy holders of the American Union Life Insurance Company may have on said bonds," and directing him to account for said bonds, and the income thereof, and to pay to the receiver any amount which may be found to be due, and restraining him, together with the other defendants, "from doing any act whatsoever in violation of the rights of the plaintiff and other creditors and the stockholders of the American Union Life Insurance Company, or in violation of the rights of Albert B. Ovitt, as receiver of the American Union Life Insurance Company." The said Superintendent of Insurance has not appeared in the action. The American Union Life Insurance Company appeared voluntarily

in the action after the receiver had been made a party thereto. At the meeting on February 26, 1901, of the stockholders of the American Company, 3,253 shares of stock out of a total of 5,000 shares of the company were represented. Of these 3,253 shares there represented, 1,290 were represented by their owners in person, and 1,963 shares were present by proxy. Of the 1,290 shares represented by the owners in person, 395 shares were voted against the ratification of the contract, and 895 were voted in favor of it. Of the 1,963 shares present by proxy, 20 shares were voted against the ratification of the contract, and 1,943 shares were voted in favor of it. The legality of the contract is questioned by the plaintiff on a number of grounds.

We are first, however, confronted by some preliminary objections strongly urged by defendants, which must be overcome before we can properly discuss the merits or legality of the contract itself. As we have seen, the plaintiff is a judgment creditor, and he claims, by the wording of his complaint, to sue on behalf of all creditors and stockholders of the American Company who may come in and be made parties to the action. The receiver was not appointed in dissolution proceedings, but in sequestration proceedings instituted under section 1784 of the Code. As we have seen, the plaintiff's prayer asks no personal benefit, but merely and solely demands judgment in favor of the receiver, and the plaintiff herein can obtain no undue advantage over other creditors of the American Company from a judgment in his favor in this action. See People v. Loan Co., 177 N. Y. 231, 467, 69 N. E. 429, 1105; Lodi Chemical Co. v. Lead Co., 41 App. Div. 535, 58 N. Y. Supp. 717; Creteau v. Glass Co., 54 App. Div. 168, 171, 174, 66 N. Y. Supp. 370; Hirshfeld v. Fitzgerald, 157 N. Y. 166, 181, 51 N. E. 997, 46 L. R. A. 839; Salisbury v. Publishing Co., 85 Hun, 99, 102, 32 N. Y. Supp. 652; Brinckerhoff v. Bostwick, 99 N. Y. 185, 194, 1 N. E. 663. I think, therefore, we must treat this action substantially as one brought on behalf of the said receiver. But what is the power of a receiver in sequestration proceedings? Whom does he represent? What are his relations to the policy holders and stockholders? These preliminary questions first demand our consideration.

Section 1784 of the Code reads as follows:

"Where final judgment for a sum of money has been rendered against a corporation created by or under the laws of the state, and an execution, issued thereupon to the sheriff of the county * * * has been returned wholly or partly unsatisfied, the judgment creditor may maintain an action to procure a judgment sequestrating the property of the corporation, and providing for a distribution thereof, as prescribed in section 1793 of this act."

The latter section provides thus:

"A final judgment in an action, brought against a corporation, as prescribed in this article, * * * must provide for a just and fair distribution of the property of the corporation, and of the proceeds thereof, among its fair and honest creditors, in the order and in the proportions prescribed by law, in case of the voluntary dissolution of a corporation."

Are we to infer from this statutory provision, as urged by defendant's counsel, that the receiver in sequestration proceedings represents only the creditors of the corporation? If so, what are we to

say of the position of the policy holders and stockholders in the case at bar? The policy holders have a first lien upon the $100,000 in bonds deposited with the Superintendent of Insurance, under section 71 of the insurance law. What rights would the receiver have over this fund? Suppose there should be a surplus after the payment of all obligations to the creditors; would the receiver have power to distribute that surplus among the stockholders, or would his powers cease after the claims of the creditors had been satisfied? Section 1793 of the Code, as we have seen, merely provides for the distribution of the assets among the creditors in the order prescribed in dissolution proceedings. This order is as follows:

"(1) All debts entitled to a preference under the laws of the United States; (2) judgments actually obtained against such corporation to the extent of the value of the real estate on which they shall respectively be liens; and (3) all other creditors of such corporation, in proportion to their respective demands, without giving any preference to debts due on specialties."

See Birdseye's Rev. St. (2d Ed.) p. 685; (3d Ed.) p. 760, § 127.

There is nothing here to indicate the position of the receiver in sequestration proceedings in respect to the policy holders and stockholders. With receivers appointed in dissolution proceedings or general receivers, the law is very definite. Such a receiver of an insolvent corporation represents the corporation which was the custodian of the property and assets for the benefit of stockholders and creditors, and he also represents those creditors and stockholders, and, in case of an insolvent life insurance company, he is the trustee of and represents the creditors and all interested in the fund, including the policy holders. See Mason v. Henry, 152 N. Y. 537, 46 N. E. 837. Such a receiver can disaffirm and maintain an action to set aside illegal or fraudulent transfers of the property of the corporation made by its agents or officers, or to recover its funds or securities invested or misapplied. See Attorney General v. Guard. M. L. Ins. Co., 77 N. Y. 275.

The defendant's counsel, however, urges that in none of the cases covered by the authorities is the receiver one appointed in sequestration proceedings, and that these authorities do not apply here. Section 1788 of the Code provides that a permanent receiver in an action brought as prescribed in article 3 of chapter 15, tit. 2, of the Code, which includes an action under section 1784 for sequestration, "has all the powers and authority conferred * * * upon a receiver appointed upon the voluntary dissolution of a corporation." See section 1788, taken in connection with sections 1784, 1787. The receivers in voluntary dissolution proceedings "shall be vested with all the estate, real and personal, of such corporation * * * and shall be trustees of such estate for the benefit of the creditors of such corporation and of its stockholders." 2 Rev. St. (1st Ed.) p. 469, pt. 3, c. 8, tit. 4, § 67 (Birdseye [3d Ed.] p. 758, § 115). "Such receivers shall have all the power and authority conferred by law upon trustees to whom an assignment of the estate of insolvent debtors may be made. * * *" Id. § 68. Such receivers have authority to bring actions to set aside illegal transfers and represent all interested in the funds of the corporation. Cases above cited;

Birdseye's Rev. St. (2d Ed.) 683, 693. See, also, Rich v. Sargent Granite Co., 23 Civ. Proc. 361, note, 30 N. Y. Supp. 139.

We therefore reach the conclusion that the receiver in the case at bar represents both creditors and stockholders, and that he can maintain an action to set aside the transfer in question. Hurd v. N. Y. & C. S. L. Co., 167 N. Y. 89, 60 N. E. 327. We have seen that the case at bar must be treated as one brought on behalf of said receiver. In referring to the effect upon the status of a corporation produced by sequestration proceedings, Mr. Justice Cullen said:

"The provisions of the present Code that the property, after the payment of the creditors, should be distributed among the stockholders, instead of being returned to the corporation, would seem to indicate that a final decree of sequestration works a practical dissolution of the corporation." Eddy v. Cooperative Dress Ass'n, 3 Civ. Proc. R. 442.

The General Term of the former Superior Court held that "the decree of sequestration * * * in effect closed the career of the corporation, and its corporate life then came to an end." Tockerson v. Chapin, 52 N. Y. Super. Ct. 16, 19.

Although an actual statutory dissolution of the corporation is not brought about by sequestration proceedings, still a decree of dissolution could be easily obtained in an action brought under section 1785 of the Code, should such dissolution be required; and even assuming that the receiver in sequestration proceedings would be without power to do more than pay the creditors, and that he could not distribute the surplus, if any, among the stockholders, he could, under order of the court, pay such surplus into court to await the result of an action brought under section 1785 of the Code for a dissolution of the corporation. So far as the policy holders are concerned, they have, of course, a first lien upon the $100,000 in bonds deposited with the Superintendent of Insurance, under section 71 of the Insurance Law; but, with regard to the surplus of such fund, if any there be, after satisfying their lien, and with respect to the remaining assets of the corporation, I do not see how they stand on any better footing than the creditors. The lien of the stockholders is, of course, subordinate to that of the policy holders and that of the creditors. All these classes must be held to be represented here by this receiver, who is vested with the title to all the property and choses in action of the corporation. Hurd v. N. Y. & C. S. L. Co., 167 N. Y. 91, 60 N. E. 327. While, however, the receiver may be thus said to represent the policy holders in their capacity of creditors, still, so far as the distribution of the trust fund of $100,000 is concerned, I do not think that the Superintendent of Insurance can be required to pay over that fund to this receiver. The distribution of that fund should be made by the Superintendent himself. People ex rel. Ruggles v. Chapman, 64 N. Y. 557; Ruggles v. Chapman, 1 Hun, 324, affirmed 59 N. Y. 163, 165; People v. American Steam Boiler Ins. Co., 147 N. Y. 25, 41 N. E. 423; Matter of Guardian Mut. Life Ins. Co., 13 Hun, 115, affirmed 74 N. Y. 617. The Superintendent is a statutory trustee, and the fund was deposited with him for a specific purpose. Until that trust is executed, neither can the Superintendent be compelled to surrender the securities, nor may he

surrender them voluntarily, and his possession will not be disturbed in the absence of misconduct on his part. It is true that section 76 of the insurance law provides that, under certain conditions and circumstances, an action may be brought by the Attorney General, and that, where it appears that the assets and funds of the corporation are not sufficient to justify its further continuance in business, the court shall enjoin the corporation from further carrying on its business and shall appoint a receiver, who "shall take possession of all such assets and credits, including the securities deposited in the Insurance Department," while section 77 provides for the converting of these securities into money by the Superintendent of Insurance, and the payment of the proceeds to the receiver. The securities, however, referred to in sections 76 and 77, are not the securities deposited under section 71 of the said insurance law, but sections 76 and 77 refer to insurance companies which have made special deposits to secure registered policies and annuity bonds under the provisions of section 73 of the said law. People v. Am. Steam Boiler Ins. Co., 147 N. Y. 25, 41 N. E. 423; People ex rel. Stout v. Chapman, 5 Hun, 222. In the case at bar the $100,000 in bonds were deposited, as we have seen, under section 71 of the insurance law, so that this receiver has not the power over the said fund that is conferred by said law upon receivers appointed under section 76. The receiver of an insurance company has the powers over the trust fund conferred by sections 76 and 77 only where the company has made a special deposit under section 73, and issued registered policies and annuity bonds. The court, however, has acquired jurisdiction over the Superintendent of Insurance in this action, and can direct such disposition by him of the trust fund as the law and facts of the case may require. Ruggles v. Chapman, 1 Hun, 324; People v. Chapman, 5 Hun, 222; Attorney General v. Ins. Co., 92 N. Y. 654; In re Home Provident Safety Fund Ass'n, 129 N. Y. 288, 29 N. E. 323.

Having disposed of the preliminary questions presented herein, we must now consider the merits and legality of the transfer itself. Counsel devote much discussion to the effect of section 48 of the Stock Corporation Law (Laws 1892, p. 1838, c. 688, as amended by Laws 1901, p. 970, c. 354) upon the transfer in suit. I do not think, however, that this statute as it stood at the time of the transfer, in February, 1901, has any application to the facts shown by the evidence in the case at bar. The decision of the controversy here presented must rest upon other grounds. The assets of the American Company constituted a trust fund for the benefit of its creditors, and the assignment, disposing of such fund so that the creditors, other than those covered by it, could not benefit by their lien, was a fraud upon those creditors, and they may set the assignment aside and follow the assets. In the case of Cole v. Millerton Iron Co., 133 N. Y. 164, 30 N. E. 847, 28 Am. St. Rep. 615, it was held that the assets of a corporation are a trust fund for the payment of its debts, upon which its creditors have an equitable lien, both as against the stockholders and all transferees, except those purchasing in good faith and for value, and that a transfer by a corporation of all its property and effects, which has the effect of terminating the regular

business of the corporation, and was made and accepted by its transferee with that purpose, is illegal as against creditors of the corporation. In that case the only consideration for the transfer was the assumption by the transferee of the debts of the transferror. The court held, also, that it was no answer to the alleged illegality of the transfer that the creditor was not harmed by the change of debtor; and it was further held, that where the parties to such transfer know that its necessary effect will be to make the corporation unable to pay its debts, they will be held to have intended that consequence of their acts, and the transfer is illegal. While section 22 of the insurance law (Laws 1892, p. 1940, c. 690) permits an insurance company to reinsure the whole or any part of any policy obligation in any other insurance corporation, the transfer in question was not merely a reinsurance, for the security company assumed considerably more than the policy obligations of the American Company, while the latter transferred all of its assets, leaving a certain number of creditors entirely unprotected. The only consideration for the transfer was, as we have seen, the assumption of a part of the debts and obligations of the American Company, including the policy obligations. The security company was not a transferee in good faith, because, although it knew it was taking all the assets of the American Company, it failed to provide for the payment of all the creditors of the latter company. It was the duty of the security company to see that no creditor was deprived of all means of payment, and it must be held that it had at least constructive knowledge that there were creditors unprovided for, since Mr. Super, who alone represented the security company in the transaction, had been long in the insurance business, and knew that an insurance company employs agents, lawyers, and medical examiners throughout the country; and he should have ascertained whether or not the American Company was indebted to some of these, but he made no such inquiry. A glance at the agents' ledger or other books of the American Company would have shown such indebtedness. The evidence shows that the said Super made no examination or inquiry whatever as to any liability of the American Company, but accepted without question those set forth in the schedules annexed to the transfer as the only obligations of the American Company. There is no evidence or claim that the said Super was misled by any representations or assertions of the representatives of the American Company. The transfer was a fraud upon the unprotected creditors of the American Company, and the transferee, as well as the transferror, must be deemed to have known that the necessary effect of the transfer would be to make the American Company unable to pay its debts. Said transfer, therefore, was illegal, under the authority of Cole v. Millerton Iron Company, supra. The power to reinsure was given for the protection of corporations, and to enable them to continue their business in safety, and not as an instrument of destruction. As we have seen, the transfer of all its property by the American Company put it out of business, and practically brought its corporate existence to an end. It has held no meetings, done no business, and been without any assets. Executions against it have

been issued and returned unsatisfied, and a receiver has been appointed. We have also seen that the contract was not ratified by all the stockholders, but that a number of shares were not voted at all, and a considerable percentage of the shares was voted against such ratification.

The case of People v. Ballard, 134 N. Y. 294, 32 N. E. 54, 17 L. R. A. 737, was one in which the trustees of a domestic corporation transferred all its property to another corporation, organized at the time under the laws of the state of California, for the purpose of carrying on the business theretofore conducted by the domestic corporation, and of taking title to its assets. This was done with the approval of stockholders holding a majority of the stock, in good faith, to save the property from sacrifice, but without the consent of the holders of a large number of shares, and against the protest of some of the stockholders. The sole consideration for such transfer was an agreement by the California company to pay the debts of the New York company, and to issue to it certain shares of its capital stock. Judge Vann, in delivering the opinion of the court, said:

"A corporation cannot cease to exist of its own will. Its life continues until either the charter period has expired, or the court has decreed a dissolution. The law made it, and the law only can put an end to it. As it cannot take its own life directly, it cannot do so indirectly, for that would be a fraud upon the law and against public policy. By the transaction complained of, the company was stripped of all its property, and thus prevented from going on in business, and deprived of all means of carrying into effect the object of its existence. While a corporation may sell its property to pay debts or to carry on its business, it cannot sell its property in order to deprive itself of existence. It cannot sell all its property to a foreign corporation organized through its procurement * * * for the express purpose of stepping into its shoes, taking all its assets, and carrying on its business. That would be the practical destruction of the corporation by its own act, which the law will not tolerate. Whether the process by which it was sought to convert the New York corporation into a California corporation is called 'reorganization,' 'consolidation,' or 'amalgamation,' it was the exercise of a power not delegated, and was void. It was corporate burial in New York for resurrection in California. * * * All the authorities in this state are uniform in holding that the trustees of a corporation cannot so dispose of its property as to virtually end its existence, and prevent it from carrying on the business for which it was incorporated. * * * The fact that the trustees acted in good faith did not empower them to do an illegal act, and the fact that there may be some difficulty in the final adjustment of rights, because some of the stockholders consented, while others did not, constitutes no defense to the action. * * * We think that the transfer was unauthorized and void as to the nonassenting stockholders and as to the state."

In the case of Abbot v. American Hard Rubber Co., 33 Barb. 578, which is cited with approval in the foregoing opinion of Judge Vann, it was held that a transfer of all the personal property of a business corporation, without the consent of some of its stockholders, which practically terminated the corporation by taking from it the power to fulfill the object of its organization, was a violation of that object, and was not within the power of the trustees, and was void as ultra vires.

The case of Hurd v. N. Y. Steam Laundry Co., 167 N. Y. 91, 60 N. E. 327, was brought by a receiver of a corporation, appointed in

sequestration proceedings, to set aside the sale of the plant of the corporation to another corporation. It was there held that, where the rights of a creditor have intervened, a corporation has no power, even with the consent of all its stockholders, to sell its plant to another corporation and to retire from business, without regard to the debt to the creditor, since the creditor has the right to rely upon its assets for the payment of his debt, and has an equitable lien thereon, both as against stockholders and all transferees, except those purchasing in good faith and for value.

I am of opinion that the transfer in the case at bar of all the property of the corporation, leaving certain creditors unprotected, and carried into effect against the will of a considerable number of its stockholders, was not such a reinsurance as is contemplated by section 22 of the insurance law, but is an illegal transaction, and must be set aside. The form of the findings and judgment will be settled on notice to all parties, and the question of costs and allowances will be determined at the time of settlement.

Judgment accordingly.