## ANGLE v. BANKERS' SURETY CO

(Circuit Court of Appeals, Second Circuit. July 2, 1917.)

No. 198.

**1. BANKRUPTCY ⬾303(1)—PREFERENTIAL TRANSFERS—BURDEN OF PROOF.**

In a suit by the trustee in bankruptcy to set aside a mortgage deed given by the bankrupt to a surety company to secure repayment of a sum of money which the surety agreed to advance to a construction company to be applied on specified contracts, and also to indemnify the surety company against loss as surety on such contract, where it appeared that the surety company made the advances and that they were never repaid by the bankrupt, the bankrupt's trustee has the burden of showing repayment by the construction company.

**2. BANKRUPTCY ⬾160—PREFERENCES—WHAT ARE.**

The execution of a mortgage by one not shown to then be insolvent, to indemnify surety company which became surety on the bond of a construction company, cannot, the transaction being a future one, be treated as preferential, the contract not then being deemed preferential.

**3. BANKRUPTCY ⬾181—FRAUDULENT TRANSFER—CONSIDERATION.**

Where the bankrupt executed a mortgage deed to induce defendant to make advances to a construction company, a misapplication of the advances by an official of the company, with the consent of the bankrupt, furnishes no ground to avoid the mortgage.

**4. CORPORATIONS ⬾387(1)—CONVEYANCES—RIGHT TO OBJECT.**

Where a construction company conveyed its plant to its surety, one who had given a mortgage to the surety to indemnify it for liability cannot object that the conveyance was ultra vires, only the company being entitled to make that objection.

**5. BANKRUPTCY ⬾303(3)—FRAUDULENT CONVEYANCES—EVIDENCE.**

In a suit by the trustee of a bankrupt, who executed a mortgage to secure the repayment of advances by defendant to a construction company, and also to indemnify defendant against loss on the construction company's bond, to set aside the mortgage on the ground that the advances had been repaid, evidence *held* insufficient to establish that the advances had been repaid by the construction company or that the conveyance was in fraud of creditors.

**6. BANKRUPTCY ⬾184(2)—CHATTEL MORTGAGES—WHAT ARE.**

An agreement between a construction company and its surety, that upon the company's default title to its plant should vest in the surety company, which was required to complete the work, is not a chattel mortgage, and so is not void under Bankruptcy Act July 1, 1898, c. 541, § 67a, 30 Stat. 564 (Comp. St. 1916, § 9651), because not recorded as required by state laws.

**7. BANKRUPTCY ⬾172—TRUSTEES—RIGHTS OF.**

In a suit by the trustee of a bankrupt, who executed a mortgage to secure defendant for advances to a construction company and to indemnify it as surety on the company's bond, where the plant of the construction company which defaulted had been transferred to defendant in accordance with the contract between it and defendant, the surety of the bankrupt company cannot attack the transfer of the plant as one made to hinder, delay, and defraud the construction company's creditors, that right inhering only in the trustee in bankruptcy of the construction company.

Appeal from the District Court of the United States for the Northern District of New York.

⬾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

244 F.—26

Suit by Edwin C. Angle (now Gerardus Smith), as trustee in bankruptcy of the estate of Edward F. Garling, against the Bankers' Surety Company. From a decree for plaintiff, defendant appeals. Reversed.

See, also, 210 Fed. 289.

Daniel Naylon, Jr., and John D. Miller, both of Schenectady, N. Y., for plaintiff.

Joseph A. Murphy, of Albany, N. Y., for defendant.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. This is an appeal by the defendant in a suit brought by the trustee in bankruptcy of Edward F. Garling to set aside a deed executed by him and his wife in the form of a mortgage, and delivered to the Bankers' Surety Company to secure the repayment by Garling of the sum of $13,000 which the Bankers' Company agreed, at his request, to advance to the Mohawk Engineering & Construction Company to be applied by it on account of two specified contracts, and also to indemnify the Bankers' Company against any loss to it as surety upon the said contract.

The Mohawk Company's contracts in question were, one with the village of Matteawan for grading and paving, and the other a subcontract for work on the State Barge Canal, for the state of New York. The Bankers' Company was surety in the sum of $15,000 for performance of the Matteawan contract, and for $13,000 for the performance of the Barge Canal contract, having Garling, who was a stockholder, director, and treasurer of the Mohawk Company, as its indemnitor in each case.

The mortgage was dated August 2, 1910, and a petition in bankruptcy was filed against Garling November 29th, within four months thereafter.

The bill goes on three grounds: First, that Garling was insolvent and intended to prefer the Bankers' Company, which had reasonable cause to believe that a preference would be effected. Section 60 of the Bankruptcy Act (Comp. St. 1916, § 9644). Second, that the Bankers' Company had been repaid by the Mohawk Company the $13,000 advanced by it. Third, that the conveyance was made to delay, hinder, and defraud Garling's creditors, and was therefore void under section 67 of the Bankruptcy Act.

[1] The Bankers' Company did advance to the Mohawk Company $13,000 to be applied on the two contracts, and Garling personally never repaid any of it. The question is whether the Mohawk Company did. The burden of proof is on the complainant.

[2-5] The District Judge found that there was no evidence that Garling was insolvent August 2, 1910, or that he intended to prefer the Bankers' Company, or that the Bankers' Company had reasonable cause to believe that a preference would be effected, or that there was any fraudulent intent upon the part of any one in connection with the transaction. The mortgage was given not for a past, but for a present and future, consideration, and all parties regarded the contracts as profitable.

The Mohawk Company abandoned both these contracts, and the Bankers' Company, in accordance with the suretyship agreement, took over the Matteawan contract in October, 1910, its engineer Paul taking charge October 11th, completing it October 27th, and paying to the Bankers' Company what he testifies was the profit, $1,598.67. It also took over the Barge Canal contract in October, 1910, and completed it at a loss of over $200,000.

The District Judge found that there was no liability on Garling's part as indemnitor to the Bankers' Company on either bond, the Matteawan contract having been completed at a profit, and his liability as indemnitor in connection with the Barge Canal contract having been discharged as follows: The American Pipe & Construction Company had contracted with the state of New York for part of the work on the State Barge Canal and one Warner had subcontracted with the Pipe Company to perform this work. The Bankers' Company was surety to the Pipe Company in the sum of $20,000 for Warner's faithful performance of his contract, and he had indemnified the Bankers' Company against any loss. The Mohawk Company had subcontracted with Warner to do this same work, and the Bankers' Company was surety to Warner in the sum of $13,000 for its faithful performance, Garling and the Mohawk Company indemnifying the Bankers' Company. The Mohawk Company and then Warner abandoned the work. Warner, October 18, 1910, surrendered and canceled the bond of the Bankers' Company of $13,000 to him on the Mohawk Company's contract, and the Bankers' Company released him from his agreement to indemnify it in connection with his bond of $20,000 to the Pipe Company.

The District Judge found that the Bankers' Company was, by this arrangement, discharged of its liability as surety for the performance of the Barge Canal contract by the Mohawk Company, so that no claim survived against Garling. As a result he found, and we entirely concur with him, that the mortgage was a valid and subsisting lien for the $13,000, less the profit of $1,598.67 received from the Matteawan contract.

The District Judge disposed incidentally of another of the complainant's contentions. One Ryan was appointed by the Mohawk Company its attorney in fact to receive the advances to be made by the Bankers' Company to the amount of $13,000 and apply the same to the Matteawan and State Barge Canal contracts. Notwithstanding this, Ryan applied $2,500 out of the first advance of $3,000, with Garling's consent, to a different contract, viz. the Mohawk Company's Road Contract No. 5,028. This loan does not seem to have been returned, but the District Judge rightly held that even so, the Bankers' Company would not be responsible for the diversion, and that neither Garling, who consented to it, nor his trustee in bankruptcy, had any standing to complain.

Upon the petition of the trustee the case was reopened to let in proof that the Bankers' Company had received personal property subsequently valued by the special master at $10,655.28, which should be credited on account of Garling's mortgage debt. The claim comes about as follows: The Mohawk Company had a third contract with the state

known as Road Contract No. 5,028, for the performance of which the Bankers' Company was surety in the sum of $31,500. October 7, 1910, the Mohawk Company, having abandoned this contract, adopted a resolution to transfer all its plant in connection therewith at values to be appraised, in consideration of the payment by the Bankers' Company of the Mohawk Company's indebtedness outstanding on the contract, amounting to over $17,000, and of completing the contract without loss to it.

The transfer was in accordance with the contract of suretyship between the two companies, which contained the following provision:

"The undersigned further agrees that upon notice to, or discovery by, the company of any failure to comply with any provision of the contract for the completion of which the company has given its bonds, immediately upon said notice or discovery the right of possession of such plant as it may own or have upon said work shall vest in the company, so that the company may use same in the prosecution of said contract to completion."

We assume that the Mohawk Company was insolvent at the time, and that the Bankers' Company knew it.

A previous resolution had been prepared transferring the contract and plant to one Consalus, which was intended to be adopted at a meeting of the board called for October 6, 1910. Consalus in the meantime withdrew his offer, no meeting was held October 6th, and the resolution was never passed. October 7th, two of the three directors of the Mohawk Company being present, the above resolution transferring the contract and plant to the Bankers' Company was adopted. The complainant treats this as unauthorized and ultra vires, apparently because different from the resolution first drawn. However, the only person, if any, entitled to object was the Mohawk Company, which never did, but, on the contrary, ratified by making a formal assignment of the contract and plant to the Bankers' Company October 17, 1910, and its trustee in bankruptcy has never raised the question of ultra vires.

The special master charged the Bankers' Company with the value of this plant on the ground that it was a transfer without consideration and a preference under section 60 of the Bankruptcy Act, as well as under section 66 of the Stock Corporation Law of New York (Consol. Laws, c. 59), the material part of the latter being:

"(66) * * * No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid, except that laborers' wages for services shall be preferred claims and be entitled to payment before any other creditors out of the corporation assets in excess of valid prior liens or incumbrances."

The Mohawk Company was adjudicated a bankrupt January 28, 1911, and its trustee brought suit in the state court of New York against the Bankers' Company, October 11, 1911, before the present suit was begun, April 24, 1912, to avoid the transfer as a preference, under section 60 of the Bankruptcy Act, within four months of the filing of the petition. This suit is still pending, and the question must

be disposed of in it. The trustee in bankruptcy of the Mohawk Company is the only person authorized to act in the premises.

At all events, we think the Bankers' Company paid for the plant by paying the Mohawk Company's outstanding liabilities in connection with it to a much larger amount and by completng the contract without loss to the Mohawk Company. The transfer was not in consideration of a prior indebtedness nor out of the regular course of business, as were the transfers by the corporations in the cases relied upon by the complainant. Cole v. M. I. Co., 133 N. Y. 164, 30 N. E. 847, 28 Am. St. Rep. 615; Hurd v. Laundry Co., 167 N. Y. 89, 60 N. E. 327. In them the corporation transferred all its assets to a new company, substituting a new defendant for the creditors. The transfer in this case was in pursuance of a very reasonable and usual provision of such contracts, viz. that if the contractor failed to complete the contract the surety might do so, and to that end be given either the possession or title to the plant existing at the time of the contractor's default. We discover no evidence whatever of an intent on the part of the Mohawk Company to prefer the Bankers' Company or any reasonable ground for the latter to believe that a preference would be effected. Indeed, if any preference were effected, it would be not to the Bankers' Company, but to the creditors whose claim that company paid, and who had no knowledge of the transaction whatever. The object of both parties was entirely different, viz. to complete the contract without loss.

The special master also charged the Bankers' Company with checks aggregating $5,976.34 received from the Fishkill Electric Railway Company. It is not made plain that these were payments on account of the Matteawan contract. At all events, the mere receipt by the Bankers' Company of moneys from that contract or from the Barge Canal contract does not show that the moneys were paid on account of the advance of $13,000 guaranteed by Garling. As the Bankers' Company lost over $200,000 on the Barge Canal contract, it might have received a great many checks to be applied to other purposes than to payment of this particular advance of $13,000, guaranteed by Garling. The parties not having made any application of the payments, the court should apply them to the Bankers' Company's unsecured claims in the first instance. In this way the Bankers' Company was brought in debt to the Mohawk Company, and the District Judge, confirming the report of the special master, entered a decree that the mortgage be canceled and discharged of record.

[6, 7] The defendant thereupon moved that the decree be vacated and the case reopened to permit it to offer testimony which it had failed to offer before the special master because of some misunderstanding as to the time of the closing of the case. This motion was granted. The special master then added a new charge against the Bankers' Company. He calculated the amount unpaid by the state under the Barge Canal contract at the time the Bankers' Company took it over at $9,643.54, which he held the company got for nothing; that the transfer was made without consideration and in fraud of the Mohawk Company's creditors under section 67e; that the agreement that the title to the plant should vest in the Surety Company upon the Mohawk Company's default was a chattel mortgage, and void under 67a,

because not recorded as required by section 230 of the New York Lien Law (Consol. Laws, c. 33). He cited, in support of this latter view, Title Guaranty Co. v. Witmire, 195 Fed. 41, 115 C. C. A. 43, and Massachusetts Bonding Co. v. Kempner, 220 Fed. 847, 136 C. C. A. 593. In those cases there was a present assignment of title to things not in existence, whereas in this case the agreement was that upon the contractor's default possession of the plant then existing should vest in the surety, and the assignment actually made was a present one. It is impossible to regard this provision as being a chattel mortgage. The other objection that the transfer was made to hinder, delay, and defraud the Mohawk Company's creditors is available to its trustee in bankruptcy and not to Garling's trustee. The District Judge affirmed the report of the special master, and, the Bankers' Company being found to be still more overpaid, entered a final decree ordering that the mortgage on Garling's property should be canceled, from which this appeal is taken.

We discover no evidence of any intent on the part of the Mohawk Company, in transferring this contract and plant to the Bankers' Company, to delay, hinder, or defraud its creditors. The transaction seems to us perfectly natural and in accordance with the terms of the suretyship agreement made between the parties. The Mohawk Company desired the contract to be completed without loss to itself. The Bankers' Company has completed it at a great loss, and has increased the Mohawk Company's estate by paying off indebtedness for which it would be liable and by relieving it of any claim by Warner for nonperformance. We are of opinion that the conclusion originally arrived at by the District Judge was right, and that the decree should be that the mortgage is a good and valid security to secure the sum of $13,000 advanced by the defendant with interest, less $1,598.67 received by it with interest, and that, upon payment of this sum within a time to be fixed by the District Court, the mortgage be discharged of record, in default whereof the bill be dismissed, with costs.

Decree reversed.