## ABRAMS v. MANHATTAN CONSUMERS' BREWING CO. et al.

(Supreme Court, Special Term, New York County.   June 6, 1910.)

**1. CORPORATIONS (§ 538*)—INSOLVENCY—PREFERENCE—EVIDENCE.**

Evidence *held* to make out a prima facie case of insolvency of a corporation when it disposed of certain property, within Stock Corporation Law (Laws 1909, c. 61; Consol. Laws, c. 59) § 66, providing that no conveyance, assignment, or transfer of any property by any such corporation, nor any payment made, etc., when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors, shall be valid.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2151; Dec. Dig. § 538.*]

**2. CORPORATIONS (§ 544*)—INSOLVENCY—PREFERENCE—EVIDENCE.**

Evidence *held* to show that an insolvent corporation, in making certain payments, intended to prefer one creditor over others.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2165; Dec. Dig. § 544.*]

Action for sequestration by John M. Abrams against the Manhattan Consumers' Brewing Company and another. Judgment for plaintiff.

Charles L. Hoffman (Charles L. Hoffman and Henry A. Friedman, of counsel), for plaintiff.

Rogers, Locke & Babcock (George Gordon Battle, of counsel), for defendants.

GIEGERICH, J. For some years prior to 1905 the defendant brewing company, a stock corporation, had been conducting its business in the city of New York. It was considerably indebted to the defendant bank, and the latter held two mortgages upon the real property owned by the brewing company and used by it for its place of business. In the month of January, 1905, the defendant brewing company entered into an agreement with the Consumers' Park Brewing Company of Brooklyn, another corporation engaged in the same business, but not a party to this action, by which the defendant brewing company agreed to sell and the Consumers' Park Brewing Company agreed to purchase certain goods and chattels forming part of the plant of the defendant brewing company, together with all bills receivable, chattel mortgages, saloon fixtures, licenses, leases, "and all other instruments that bind its trade and good will" for the sum of $30,000, payable in 12 promissory notes, of $2,500 each, maturing at different times thereafter. It was further agreed that the Consumers' Park Brewing Company should immediately take possession of the plant of the defendant brewing company, perfect the ale and beer then on hand, make the same marketable, and sell and collect for the same, paying the defendant brewing company at the rate of $2.50 for each barrel so perfected and sold. It was further agreed that all license fees and all other outstanding accounts due to the defendant brewing company and not included in the sale should be collected by the Consumers' Park Brewing

Company and paid over to the defendant brewing company, less 10 per cent. The agreement also contained various other provisions not material to the present controversy. Shortly after the making of this agreement the Consumers' Park Brewing Company took possession of the plant and premises of the defendant brewing company and proceeded to carry on the business; the latter company thereupon ceasing to do business. By a later agreement, made in the same month, the Consumers' Park Brewing Company purchased from the defendant brewing company certain materials not included in the original sale for the sum of $4,853.31, and on May 29, 1905, the same company purchased the accounts and licenses then outstanding and the beer and ale still on hand for the sum of $1,930.56, thus abrogating the provisions of the earlier agreement with regard to these items. These several agreements were duly performed and the several sums therein named were paid over by the Consumers' Park Brewing Company to the defendant brewing company. Excepting the sum of $30,000 first mentioned, the moneys so received by the defendant brewing company were by it applied to the payment of debts incurred by it prior to the transfer of its business to the Consumers' Park Brewing Company, including its debts to the defendant bank. The notes aggregating $30,000, before mentioned, were transferred by the defendant brewing company to the defendant bank, and were by it duly collected, and the proceeds retained by it and applied upon account of the indebtedness of the defendant brewing company to it. The various payments so made to the bank and the moneys later realized by the bank upon the sale of the real property of the brewing company were together insufficient to discharge the indebtedness of the latter company to the bank; but all other creditors appear to have been paid in full, with the single exception of the plaintiff. In the month of June, 1905, the defendant brewing company contracted to sell the real property formerly occupied by it for its brewery, and the sale was closed in the following month. The defendant bank held mortgages upon this property, which had been given by the predecessors in title of the brewing company, and the proceeds of the sale, being less than the amount of these mortgages, were paid over to the bank, which thereupon satisfied the mortgages of record. The plaintiff concedes that this payment to the bank was properly made. In July, 1905, the plaintiff commenced an action in the City Court of the City of New York against the defendant brewing company to recover for commissions claimed to have been earned during the period from the beginning of April, 1904, to the end of March, 1905. The action was contested, and after a trial resulted in a judgment in favor of the plaintiff for the sum of $1,282.57, which was entered on November 27, 1905. Execution was duly issued upon this judgment and has been returned unsatisfied. It is shown that some of the officers and directors of the defendant brewing company were more or less intimately connected with the defendant bank and with the firm of attorneys who represented the bank and who are its attorneys of record in this action, and it is shown that they attended the directors' meetings of the brewing company and were generally informed as to its affairs, and the answer of the bank admits that the

bank desired that the business of the brewing company should be liquidated and that it aided in effecting such liquidation.

I think I have thus shortly summarized the case made out by the plaintiff. The defendant brewing company defaulted, and the defendant bank offered no evidence. The plaintiff asks judgment for the sequestration of the assets of the defendant brewing company, the appointment of a receiver, and a direction that the bank account to the receiver for all moneys received by it from the sale of the plant and business of the brewing company, excepting its real property. The gist of the plaintiff's complaint is that the defendant brewing company has been in effect dissolved by the sale and transfer of all its property and assets, while the safeguards provided by statute for the protection of creditors in such cases have been wholly ignored, and that this has been done with the knowledge and active assistance of the defendant bank, which, by the consummation of the plan, has profited at the expense of the plaintiff. No attempt is made to attack the transfer of the tangible property or to follow it into the hands of its purchasers. That was the remedy sought in the cases of Cole v. Millerton Iron Co., 133 N. Y. 164, 30 N. E. 847, 28 Am. St. Rep. 615, and Hurd v. N. Y. & C. Steam Laundry Co., 167 N. Y. 89, 60 N. E. 327, in both of which cases the plaintiff succeeded. It is, indeed, probable that there may be no ground for such relief under the circumstances surrounding the present transactions. Nor is there here any attempt to pursue the directors of the defendant brewing company. The case of Darcy v. Brooklyn & N. Y. Ferry Co., 196 N. Y. 99, 89 N. E. 461, cited by the plaintiff, may be an authority in support of such an action; but it does not support the present action against the bank. In the present case the bank was a creditor of the brewing company. It may have been diligent in protecting its claims, although it must be said that all the other creditors, excepting only the plaintiff, appear to have fared better than the bank did. If the bank did receive a preference over the plaintiff, nevertheless it received less than was due it, and if that preferential payment is to be upset it must be because it was obnoxious to some statute, and the statute relied upon is section 66 of the stock corporation law (Laws 1909, c. 61; Consol. Laws, c. 59). It seems to have been held that it is not necessary, in order to bring the case within the prohibition of the second sentence of that section, that the corporation should have first refused to pay any of its notes or other obligations. Cole v. Millerton Iron Co., supra. The material portion of that section, therefore, reads as follows:

"No conveyance, assignment or transfer of any property of any such corporation, by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. * * *"

To bring the payments made to the defendant bank within the prohibition of the section just quoted, it must appear that the corporation was insolvent at the time when such payments were made, or that its insolvency was then imminent, and, further, that such payments were made with the intent of giving a preference to the bank over other

creditors. All the moneys realized by the brewing company from the sale of its personal property and from the collection of outstanding accounts, except such as were used in the payment of its other debts, were turned over to the bank; but it is admitted that the moneys so. turned over were insufficient to discharge its indebtedness to the bank, besides which there remained the debt to the plaintiff, which became due at the end of March, 1905, although not adjudicated in his favor until the following November, and certain other judgments previously recovered by the plaintiff and another creditor against the defendant brewing company. The real property still held by the brewing company after the sale of its personal property, and its only remaining asset, was sold in June, 1905, for a sum very much less than the amount of the incumbrances upon it. It seems to me that these facts make out at least a prima facie case of insolvency on the part of the brewing company at the time when it disposed of its personal property, and its payments to the bank were continued for some time thereafter.

The remaining question is whether the payments to the bank are shown to have been made with intent to give a preference to the bank over other creditors. It is true that all the other creditors, except the plaintiff and the bank, have finally been paid. It is also true that the plaintiff did not bring action on his claim until after the payments in question had been made, and that his claim had not wholly accrued until the end of March, 1905, while the greater part of the personal property of the corporation had been sold in the preceding January. But he testified that he had spoken to one of the officers of the brewing company after that sale concerning his claim, and, although the claim was. disputed, it was afterwards adjudicated in his favor, and as it was for commissions earned upon the sale of beer for the brewing company it is reasonable to suppose that that company was aware of the facts upon which the claim was based and which were afterwards held to justify it. Besides, the other judgments previously recovered against the brewing company were left wholly unprovided for, and, although they were afterwards satisfied when the title to the real property was closed upon the subsequent sale, it can only be conjectured that this was done as a matter of convenience to the vendor or to the bank, and to enable the contract of sale to be carried out, since these judgments were all subsequent to the lien of the mortgages.

It seems to me, therefore, that the brewing company must be held to have intended the natural consequences of its acts, and that the natural consequence of its payments to the bank was to prefer the bank over the plaintiff, both in respect to his claim for commissions and in respect to the judgments previously recovered by him. So far as the plaintiff's claim for commissions is concerned, the motive of the officers of the brewing company may have been entirely proper. They may have disputed the claim and litigated it in entire good faith. But the issue has been adjudicated against them, and there seems to be no escape from the fact that, whatever their motive may have been, they intended to pay the claim of the bank in preference to that of the plaintiff.

My conclusion, therefore, is that the plaintiff is entitled to judgment as prayed for, with costs. The form of the decision and judgment to be entered hereon will be settled upon the usual notice to the defendant bank as well as the Attorney General. General Corporation Law (Laws 1909, c. 28; Consol. Laws, c. 23) § 312.