SCHWENN v. DARTMOUTH REALTY CO. et al.

(Supreme Court, Special Term for Trials, Kings County. December 20, 1910.)

1. CORPORATIONS (§ 548*)—INSOLVENCY—PREFERENCE—PRIOR SECURITY—BURDEN OF PROOF.

　　One whose mortgage from an insolvent corporation being attacked under Stock Corporation Law (Consol. Laws, c. 59) § 66, declaring invalid a conveyance by a corporation when insolvent, or when its insolvency is imminent, with intent to give a preference to a creditor, seeks to support it as having been given in place of a prior unrecorded mortgage to her from the corporation, has the burden of showing the prior mortgage was itself legal, and not a forbidden preference, and must also satisfy the court that any obligation thus created was one sanctioned in a court of equity.

　　[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2181–2186; Dec. Dig. § 548.*]

2. CORPORATIONS (§ 544*)—INSOLVENCY—PREFERENCE—PRIOR SECURITY.

　　Where one makes advances to a corporation on the security of its stock transferred to her, its mortgage to her as further security, after such advances have been made, is a matter of favor, so that it, or relinquishment thereof, will not support a subsequent transfer to her by the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

corporation when insolvent, which would otherwise be, under Stock Corporation Law (Consol. Laws, c. 59) § 66, an invalid preference.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2166; Dec. Dig. § 544.*]

3. CORPORATIONS (§ 548*)—INSOLVENCY—TRANSFERS WITH INTENT TO PREFER—EVIDENCE.

Evidence in a suit by a creditor to set aside conveyances by an insolvent corporation as invalid under Stock Corporation Law (Consol. Laws, c. 59) § 66, held to show an intent to give a preference.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2181–2186; Dec. Dig. § 548.*]

Suit by William Schwenn against the Dartmouth Realty Company and others to set aside conveyances as an invalid preference under the corporation law. Judgment for plaintiff.

John M. Wellbrock (John J. Curtin, of counsel), for plaintiff
Menken Brothers, for defendant Mattie H. Sniffen.

PUTNAM, J. The defendants, Edward D. Sniffen and Thomas R. White, joined in a building enterprise early in the year 1907. Neither had any means, but Mr. White had been an experienced builder. Mr. Sniffen had acted as a life insurance broker in Manhattan. Mr. White proposed to erect a four-story apartment building in Brooklyn, stating that by a temporary building loan followed by mortgages they could put up a building at a profit. Mr. White says that Mr. Sniffen was to put his money against Mr. White's experience and skill as a builder. Mr. Sniffen's version, however, is that to start the enterprise he undertook to procure about $1,500 from his wife, Mrs. Mattie H. Sniffen, who was to make the loan with interest. But, according to Mr. White, Mr. Sniffen said that he must do business in his wife's name on account of judgments against him. They also agreed that each was to draw $50 a week and divide equally the rentals and other profits.

Accordingly on February 7, 1907, a contract was entered into for the purchase of a lot at 163–165 Lefferts Place in the name of Mrs. Mattie H. Sniffen. The contract was $22,500, which is testified to be $10,000 or $12,000 more than its value. The first payment of $500 upon this contract was by Mrs. Sniffen's check. Mrs. Sniffen, however, was not present. On February 9, 1907, Messrs. White and Sniffen organized the Dartmouth Realty Company under the stock corporation law of New York, with Mr. White as president and Mr. Sniffen secretary and treasurer. The expenses of incorporation were also paid by the check of Mrs. Sniffen. After incorporating, the stock, consisting of 100 shares making $10,000 par value, was all transferred in exchange for this contract to Mrs. Sniffen, who retransferred it for nothing to Mr. Sniffen and Mr. White, to be divided between them. Then both transferred their separate certificates back to her to hold as security for her advances made and to be made by an agreement of May 22, 1907. Excavations started early in the month of February and the usual expenses of building were incurred, including pay rolls, rental of office, salaries, and incidentals, which the treasurer

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
127 N.Y.S.—24

paid largely from funds alleged to be borrowed from his wife. The temporary loan of $8,000 did not become available until April 26th, when the first payment of $3,000 was received. Mr. White also obtained contracts in the name of Dartmouth Realty Company to build a church on Linden street, also to construct a silk vault on Palmetto street, but the company accounts show receipts on the Linden street contract of $7,600, with payments thereon of $8,465, on Palmetto street outlays of $1,390 made against receipts of $1,239.37, resulting in a deficit on these two ventures of over $1,000. Another property purchased by the Dartmouth Realty Company was a lot at Prospect Place, from which no assets were realized. There were steadily paid into the bank account of the Dartmouth Realty Company various moneys alleged to be from Mrs. Sniffen through the hands of her husband, all of which are claimed to be lent to the corporation. On April 23d certain mechanics' liens by subcontractors were filed against the property, but were removed. On June 26th payments began from the building loan after deducting prior liens therefrom.

In August the situation became more serious. A mechanic's lien was filed as to this property for $744.44, with another lien against the Linden street property, both filed August 5th. Mr. Sniffen then told Mr. White that his wife (who still held all the capital stock as security) should be protected by a mortgage. After first objecting Mr. White yielded, provided this mortgage be held until necessary to be recorded, since the public knowledge of such a mortgage would injure the company's credit. This mortgage was signed August 7, 1907, reciting an indebtedness of $11,500 payable on demand, but was never recorded. The real estate brokers who had arranged this sale had later offered to obtain a loan on second mortgage in name of the Lotus Realty Company. The financial plight of the Dartmouth Realty Company had become so urgent that on September 28th it executed a junior mortgage to the Lotus Realty Company nominally for $4,000, but from which it received only $2,350 cash, as the borrower had to take at a valuation of $1,650 a property in Connecticut from which no value appears to have been realized. In October the creditors were more pressing. When the building was nearing completion and a permanent loan was about to be consummated, the Dartmouth Realty Company on October 16th hurriedly executed a mortgage payable on demand to Mrs. Sniffen for $18,246—an amount not exactly arrived at. This was recorded October 19th, simultaneously with the permanent mortgage. How the corporation had weighted itself down is shown by the fact that from the first mortgage of $45,000 it received net but $20,057, and from the second mortgage of $4,000 but $2,350, as before stated, showing total avails of but $22,407, which exhausted its borrowing capacity on this property according to Mr. White's testimony.

At the date of this mortgage the Dartmouth Realty Company was owing various materialmen considerable sums, which had not since been paid. Such indebtedness, as appears by the records of judgments subsequently recovered, amounts to from $7,000 to $8,000. On December 6th the Dartmouth Realty Company conveyed to Mrs. Snif-

fen the Prospect Place property by deed recorded December 9, 1907, simultaneously with a $6,500 mortgage to Mrs. Sniffen thereon, held unrecorded since May 20th. One of the realty company creditors was the John C. Orr Company, which recovered two judgments against the corporation on December 12, 1907. Mr. White admits that Mr. Sniffen and himself feared that the Orr Company would obtain a receiver of the property. On December 23d the Dartmouth Realty Company made over to Mrs. Sniffen an assignment of all the rents of this property; and on the same day gave her a bill of sale of certain building material and tools at Prospect Place. Later on Mrs. Sniffen assigned to the John C. Orr Company a one-tenth preferential interest in this $18,246 mortgage. Such a sharing of this security, apparently in order to quiet an active creditor, stands without explanation. This plaintiff, who contracted with the Dartmouth Realty Company on April 9, 1907, eventually recovered a judgment for $1,249.08, upon which execution was returned unsatisfied. The present suit is to set aside these conveyances to Mrs. Sniffen because in violation of section 66 of the stock corporation law (Consol. Laws, c. 59). After forbidding a corporation to transfer any of its property to its officers, directors, or stockholders, directly or indirectly, except for full value paid in cash, this statute declares that any conveyance by such corporation or any officer thereof, when insolvent, or when its insolvency is imminent, with intent of giving a preference to any particular creditor over other creditors of the corporation (excepting laborers' wages), shall not be valid (Laws 1909, c. 61, § 66).

It is urged that these loans and advances were from Mrs. Sniffen's separate estate; and, although all came through her husband's hands, that the transfers were not for the husband's benefit, and hence do not come within the first part of the statute. The second clause, however, deals with creditors whose rights may be just, but who nevertheless cannot receive any preference from an insolvent stock corporation, whose creditors stand on an equality in the distribution of corporate assets. Counsel for Mrs. Sniffen, however, invokes the principle that the mortgage by the realty company is not to be judged by the situation on October 16, 1907, so that what might otherwise be assailed as a preference may be supported by referring to the prior unrecorded August mortgage notwithstanding an intervening state of insolvency. This, it is claimed, bound the realty company in equity to secure Mrs. Sniffen, either by that instrument, or by another later mortgage which should carry out its terms; also, that, relying upon this prior unrecorded August mortgage, further advances of $4,260.34 from her were thereafter received up to this October mortgage.

Under this doctrine the defendant has the burden. She must show that the prior mortgage was itself legal and not a forbidden preference. She must also satisfy the court that any obligation thus created was one sanctioned in a court of equity. In view of the inflated values at which this property and that at Prospect Place had been taken over, and the company's subsequent contracts and management, it does not appear that the Dartmouth Realty Company was ever solvent. Brouver v. Harbeck, 9 N. Y. 589; Joseph v. Raff, 82 App

Div. 47, 81 N. Y. Supp. 546. This insolvency was evident in August, 1907, when the building loan had been drawn on as fast as its terms permitted and no more borrowing was possible, and yet there were many contractors unpaid who were threatening to enforce their liens. This situation lends probability to Mr. White's testimony that the August mortgage was drawn up because of fears that creditors would be putting on liens and causing trouble. That mortgage, payable on demand, was held ready for instant use so as to be recorded and foreclosed, if need be, prior to finishing the building. In considering the solvency of the corporation, it must be recalled that its indebtedness extended beyond its supplymen and contractors. According to the theory of the defense, it included all the moneys credited to Mrs. Sniffen. Furthermore, larger liabilities for building payments beyond the sums derived from the building loan would ensue upon its approaching completion. The agreement of May 22d expressly covered future loans. All Mrs. Sniffen's advances had thus been secured by pledge of the capital stock only. After such advances had been so made, a mortgage as further security was wholly a matter of favor, to which she had no right. This distinguishes her position from cases where the creditor has been allowed to hold his security. Mrs. Sniffen did not surrender anything to obtain her mortgage, which was the essential element of Perry v. Van Norden Trust Co., 192 N. Y. 189, 192, 84 N. E. 804, as the relinquishment of a subsisting security may support the new advantage thereby obtained. Swan v. Stiles, 94 App. Div. 117, 123, 87 N. Y. Supp. 1089. See, also, Coleman v. Burr, 93 N. Y. 17, 31, 45 Am. Rep. 160.

The statute against preferences is just and fair in case of any stock corporation. But with a building corporation like this the law should condemn a preference which would wipe out the supplymen, mechanics, and contractors whose labor and materials have created the value of the property. A test applied to acts by debtors of doubtful solvency has long been to ask if the transaction in question was in the usual course of business. Anderson v. Temple, 4 Burr. 2235. The relations with this defendant were altogether extraordinary and out of the usual course of commercial dealings. This doctrine of relation back to overreach other creditors and sustain a preference is not favored. It is characterized as "opening a new and enticing way to secure preferences, nullifies every provision of law to prevent them, and invites fraud and perjury." In re Great Western Co., 152 Fed. 123, 127, 81 C. C. A. 341, 345. It was tried in Hilton v. Ernst, 38 App. Div. 95, 57 N. Y. Supp. 908, where the court held that the different form of the later assignment excluded this doctrine. The present bankrupt law is construed to forbid such a facile means of evasion. Collier on Bankruptcy (8th Ed.) pp. 652, 653. The correct view is that a corporation insolvent or approaching insolvency holds its assets in trust for all its creditors, and can prefer none. Cole v. Millerton Iron Co., 133 N. Y. 164, 30 N. E. 847, 28 Am. St. Rep. 615; Hurd v. Steam Laundry Co., 167 N. Y. 89, 60 N. E. 327; 10 Cyc. 1246, 1248. The liberal view as to a trading corporation, by which ordinary dealings with "a going concern" are supported, is inapplicable

to such mortgaging of a new building, which left but an empty shell to satisfy the materialmen engaged in its completion. Furthermore, Mrs. Sniffen from her prior dealings (not to speak of her being the treasurer's wife) was chargeable with notice of the real situation, and the imminent suspension, which her mortgage was designed to meet.

A review of this enterprise shows a corporation started with a load of indebtedness double the value received obliged to pledge its entire capital represented by its stock, really borrowing cash for pay rolls and salaries, engaging in losing contracts, entailing sure deficits; and, as the inevitable days of reckoning with its creditors approach, its treasurer occupied in creating, first, secret preferences to his wife, and afterwards, when the light is to be let in, recording a mortgage upon the property in the face of insolvency become manifest. In addition to the inferences to which these facts give rise, we have the testimony of the president of the corporation, Mr. White, who made these instruments, that they were to protect the Dartmouth Realty Company from mechanics' liens and executions until such time as the company might be able to turn and meet its obligations. The doctrine of prior intention cannot be invoked to sustain this preference in October because the August mortgage itself was a wrongful preference within the prohibition of the statute. The insolvency shown at the time of these mortgages was still more evident on December 23d, so that the corporation was prohibited from conveying and assigning the rents and income of this property, and also from conveying other personal property at Prospect Place to Mrs. Sniffen, by which she was favored with everything belonging to the corporation, even to the tools left in the Prospect Place excavation. The transactions between the corporation and Mattie H. Sniffen form a series, all showing an extraordinary partiality in her behalf, from which is confirmed the inference that the corporation intended what was the natural consequence of these successive acts (Abrams v. Consumers' Ice Co., 68 Misc. Rep. 166, 123 N. Y. Supp. 663), after which nothing was left for the creditors. The plaintiff is therefore entitled to a judgment as prayed for decreeing that the mortgage of October 16th (except the one-tenth part assigned to the John C. Orr Company, which is not joined as defendant), the assignment of rents of December 23d, and the bill of sale of that latter date, are severally invalid and to be set aside.

The form of the decision and the judgment to be entered will be settled upon notice to the Attorney General. General Corporation Law, § 312; Consol. Laws, c. 23.